# Illinois Official Reports

## Appellate Court

---

### *People v. Tapia*, 2014 IL App (2d) 111314

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN J. TAPIA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1314 |
| Filed | January 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of defendant's postconviction petition alleging that his trial counsel was ineffective in failing to correct an error in his presentence investigation report was affirmed, since defendant forfeited that claim by failing to raise the issue in a postjudgment motion or in his direct appeal, and forfeiture aside, even if his counsel's representation was deficient, defendant failed to establish that he suffered any prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 03-CF-3149; the Hon. Christopher R. Stride, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas A. Lilien and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Colleen P. Price, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.

Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Juan J. Tapia, appeals a judgment denying his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)). The petition claimed that the attorney who represented defendant when he pleaded guilty to attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2002)) had been ineffective for failing to correct an error in the presentence investigation report (PSI) on which the trial court relied in sentencing defendant to 15 years' imprisonment. We hold that defendant has forfeited the issue and affirm.

¶ 2                              I. BACKGROUND

¶ 3    In September 2003, defendant was charged by complaint with two counts of attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2002)) and two counts of armed violence (720 ILCS 5/33A-2(a) (West 2002)). The charges were based on the events of August 28, 2003, when defendant stabbed Liliana Martinez and Rosio Gonzalez (Rosio). Defendant failed to appear for his arraignment on September 23, 2003. His bond was forfeited and a warrant was issued for his arrest. Following his arrest and extradition from Georgia, defendant appeared for arraignment on February 27, 2007. In addition to the charges related to the August 28, 2003, stabbings, defendant was charged in case number 03-CF-3213 with two counts of aggravated criminal sexual abuse of Martinez.

¶ 4    On October 9, 2007, defendant, represented by attorney Barry Boches, entered a negotiated guilty plea to the attempted murder of Rosio, a Class X felony with a sentencing range of 6 to 30 years' imprisonment (see 720 ILCS 5/8-4(c)(1) (West 2002); 730 ILCS 5/5-8-1(a)(3) (West 2002)). In return, the State dismissed the other charges and recommended a sentencing cap of 18 years' imprisonment.

¶ 5    The State presented the following factual basis for the plea. On August 28, 2003, defendant, the two victims, and Rene Gonzalez (Rene) (no relation to Rosio) were sitting in a parked van. Defendant and Rene exited the van; defendant handed Rene a knife and told him to stab Rosio while he attacked Martinez. Rene refused. Defendant opened the van door and stabbed Martinez twice in the torso; she ran off. Defendant then reached in and tried to stab Rosio. She left the van and ran, but defendant caught up to her, stabbed her in the chest and twice in the abdomen, and slashed her across the back of her left shoulder and across her temple. In the month preceding the attacks, defendant had told Rene that he believed that Martinez was cheating on him and that he wanted to kill her.

¶ 6    The PSI revealed the following pertinent information. Both victims were 15 years old on August 28, 2003. Martinez suffered stab wounds that required surgery, and she was

hospitalized for a week. Rosio suffered superficial stab wounds and was "stitched up and released." According to Martinez, on the evening of the incident, defendant drove her, Rosio, and Rene to a park on the pretext of meeting and robbing a drug dealer; on arriving, he stabbed Martinez, who ran screaming from the van; he then reentered the van, stabbed Rosio once, and, after she ran away, caught up with her and stabbed her again. Rene gave the police an account that was consistent with the foregoing. Defendant, in an interview for the PSI, said that he gave Rosio, Martinez, and Rene a ride to the park so that Rosio could buy cocaine; that Rosio and Martinez started fighting; that Rosio stabbed Martinez; and that defendant took the knife from Rosio and, in the process, started "freaking out" and swinging the knife around.

¶ 7    The PSI related the following about the history of the case. Defendant was arrested on August 28, 2003. On September 2, 2003, he posted bond and was released, but, on September 23, 2003, he failed to appear in court, and a warrant was issued for his arrest. Defendant had fled to Mexico, where he later met and married Martinez. They had a daughter. In 2005, the three of them moved to Davenport, Iowa. There, defendant was accused of kidnapping his daughter. After he gave the child to his mother, he fled to Georgia, where he incurred new charges. He was extradited to Illinois in February 2007. Since then, he had been in jail, with no major disciplinary problems.

¶ 8    According to the PSI, defendant, who was born April 1, 1982, had no juvenile record. On December 21, 2000, he pleaded guilty to unlawful use of a weapon, a Class A misdemeanor, and received 18 months' court supervision, which was terminated satisfactorily. On May 9, 2002, he pleaded guilty to three counts of criminal damage to property and was sentenced to 30 months' felony probation. In May 2002, defendant received supervision for driving under the influence of alcohol. On November 18, 2002, he pleaded guilty to resisting a peace officer, a Class A misdemeanor; that day, the trial court revoked his probation for criminal damage to property and resentenced him to two years' imprisonment.

¶ 9    In the PSI it was noted that, on April 29, 2006, defendant was arrested in Gwinnett County, Georgia, for "False Identification Documents (felony, 2 counts), Burglary (felony), Criminal Trespass (misdemeanor), Simple Assault (misdemeanor) and give False Name/Address/Birth -date to Police." The PSI also contained information that, on February 8, 2007, defendant pleaded guilty to the two counts of "False Identification Documents" and was sentenced to consecutive 12-month probation terms. He was then immediately returned to Illinois. Finally, as to defendant's criminal record, the PSI noted that, on October 10, 2005, Davenport police obtained a warrant to arrest him for kidnapping and child stealing, based on Martinez's accusation that he had stolen their daughter; the warrant was still active.

¶ 10   According to the PSI, defendant related that he left high school in 1996 but, in 1999, obtained certification as a computer technician and received a G.E.D. He worked in computers, then construction. In Mexico, he ran a chicken farm and sold it at a profit. He had been gainfully employed in Iowa and Georgia. He claimed that the kidnapping charge was based on a misunderstanding.

¶ 11   On December 17, 2007, the trial court, Judge Phillips presiding, held a sentencing hearing. At the outset, both the prosecutor and Boches told the court that they had reviewed the PSI and had no corrections or additions. The State then called Donald Paulsen, the police officer who

had responded to the crime scene. He testified that, when he arrived, he saw the two victims lying in a driveway, bleeding profusely. Rosio had a stab wound or a cut above her left shoulder blade, a cut near her sternum, and another on her upper abdomen. Paulsen identified photographs of the injuries to Rosio and Martinez; these photographs were admitted into evidence.

¶ 12    In mitigation, defendant called his parents and Martinez. Defendant's mother testified that she wanted him to be available, because she was chronically ill. Defendant's father testified that defendant had dropped out of school in tenth grade because of the gang activity there. Martinez testified that defendant had been a good father to their daughter, who was now three. Since August 2003, defendant had changed "a lot"; he no longer drank. A few months after the crime, Martinez had her baby, then went to Mexico and married defendant. Later, they moved to Iowa. At one point, she reported to the police that he had taken their daughter, but she had been mistaken; he had only dropped off the child at a relative's home. After defendant moved to Georgia, he regularly sent Martinez money.

¶ 13    In arguments, the prosecutor contended that defendant's account of the offense, as recorded in the PSI, differed widely from the evidence and demonstrated that defendant was minimizing his responsibility for his acts. Defendant had a serious criminal record even before August 28, 2003, and, after he was charged, he fled Illinois. Yet, despite being a fugitive, he "picked up offenses in Iowa, for which he must still answer; and he also picked up offenses in Georgia, for which he was convicted and sentenced." Moreover, despite supportive parents and marketable job skills, he still chose to commit crimes. The prosecutor asked the court to sentence defendant to the 18-year cap.

¶ 14    Boches argued that, for most of the time after getting out on bond, defendant "did stay arrest free. His stay in Iowa, there was an explanation for that. He was never found guilty of that. I'm not sure what the probation or what the item we're talking about Georgia is about [*sic*]." Defendant had taken responsibility for this offense and demonstrated rehabilitative potential. Boches asked the court to sentence defendant to "something more along the minimum."

¶ 15    The trial judge stated as follows. In mitigation, it appeared that defendant had "gotten some control over [his] life" and was trying to care properly for his wife and child. In aggravation, however, were several considerations, the first being the offense itself. The photographs showed "a [*sic*] awful lot of blood." Rosio had suffered several serious cuts. Although the judge did not consider in aggravation the threat of serious harm, that being implicit in the charge of attempted first-degree murder, he did consider "how this offense was, in fact, committed in this case." Further, although Martinez and defendant's parents supported him, Martinez's testimony had "very little credibility" and defendant had not in fact been taking care of his mother.

¶ 16    The judge continued:

"In aggravation, however, I am considering your prior criminal history. And certainly you do have a prior felony conviction in this state where you eventually after failing probation went to the Department of Corrections. There were other offenses

- 4 -

after that, and currently you have a pending probation case for felonies in the State of Georgia that were committed in 2006.

I'm not considering anything at all in aggravation or otherwise other to have knowledge that there is a warrant still outstanding for your arrest in Iowa, and certainly you remain presumed innocent in that. And according to what your wife testified [to] today, there does not appear to be a lot of evidence; but nobody is going to prejudge that case, particularly I."

¶ 17 The judge observed that defendant had "created *** havoc and the damage to a very young female." Defendant had "fled this jurisdiction" and gone to Mexico but eventually "did take responsibility by pleading guilty." The judge concluded that a sentence of 15 years was appropriate. After being sentenced, defendant did not file a postjudgment motion or a direct appeal. On September 17, 2009, defendant filed a "Motion For Order Nunc Pro Tunc" requesting additional credit for time served, including time in Georgia while awaiting extradition to Illinois. On September 24, 2009, the judge entered an order granting this request.

¶ 18 On December 7, 2009, defendant filed a *pro se* postconviction petition under the Act. The only factual allegations were contained in paragraph five, which stated that "[t]he trial court took into consideration improper aggravating factors of case No. 06-B-5117-9 listed as a felony conviction in the P.S.I. before the court in fashioning a sentence in this case, when in fact case No. 06-5117-9 are misdemeanors. See attached Exhibits [*sic*] *A); and counsel was ineffective in not correcting these facts before the court or going over the P.S.I. with petitioner to make corrections* in violation of petitioner's 5th, 6th, and 14th Amendment Constitutional rights." (Emphasis added.) Attached to defendant's petition was his certificate prepared pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2010)).

¶ 19 Also attached to the petition was a copy of the court order disposing of case number 06-B-5117-9 in the superior court of Gwinnett County, Georgia. The order reflects that on February 7, 2007, defendant entered a negotiated plea to two misdemeanor counts of "manufacturing false identification document" in exchange for consecutive terms of 12 months' probation. Printed at the top of the order in bold capital letters are the words, "FINAL DISPOSITION/NEGOTIATED PLEA/MISDEMEANOR SENTENCE." In exchange for defendant's pleas to those charges, the State of Georgia nol-prossed charges of burglary, simple assault, criminal trespass, and giving a false name. Judge Phillips reassigned the case to Judge Stride. Judge Stride docketed the petition, finding that defendant had raised the gist of a constitutional claim, and appointed counsel for defendant. Counsel filed an amended petition, raising the claim that Boches had provided ineffective assistance in two respects. First, Boches had failed to recognize and correct a crucial error in the PSI: the statement that, in Georgia in 2006, defendant had been convicted of two counts of a felony, "False Identification Documents." The amended petition noted that, in sentencing defendant, the judge had specifically mentioned the "felonies in the State of Georgia." Second, Boches had failed to object when the judge mentioned defendant's arrest warrant in Iowa, as defendant was presumed innocent of the charges. Counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984), but did not attach any affidavits to the amended petition.

¶ 20        On May 27, 2011, the State moved to dismiss the amended petition. In support, the State filed Boches' affidavit, which stated as follows. Before the sentencing hearing, he reviewed the PSI with defendant. At that time, defendant "did not indicate that the report was inaccurate with respect to the convictions out of Georgia." At the time of the sentencing hearing, defendant also "did not indicate that the report was inaccurate with respect to the convictions out of Georgia." In its motion, the State also argued that "[t]he defendant had the opportunity to review the presentence investigation report and remained silent regarding the inaccuracies. Through his silence, he waived these issues. The failure of counsel to raise these inaccuracies does not satisfy the first prong under *Strickland* as there is no assertion that counsel knew of the error or that the defendant informed counsel of the error."

¶ 21        On October 6, 2011, prior to the argument on the motion to dismiss, the State asked that the trial court not consider Boches' affidavit and the court agreed. The State then argued that defendant remained silent at the sentencing hearing and did not offer any corrections and that Boches did not represent defendant in the State of Georgia. Defense counsel responded by arguing that defendant "was *never* given a copy of the P.S.I. to review. That was done with Mr. Boches while he was incarcerated in Lake County Jail, and he was never actually able to view the P.S.I." (Emphasis added.)

¶ 22        The trial court denied the motion to dismiss, finding that there was no basis for the dismissal at that point. On October 25, 2011, the State answered the amended petition and maintained that defendant had failed to satisfy either prong of the test in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel. The State also argued that the record showed that defendant had the opportunity to review the PSI and remained silent regarding the inaccuracy and that, through his silence, he waived the issue. Further, the State argued that there was no assertion that Boches knew of the error or that defendant informed him of the error.

¶ 23        On December 20, 2011, the day of the third-stage hearing, defendant filed an affidavit in which he stated as follows. He did not receive a copy of the PSI to review until the date of sentencing. Before then, he had discussed his background with Boches. On December 17, 2007, just before sentencing, Boches showed defendant the PSI and "asked [him] to very quickly to look over it." Defendant did so and told Boches that he "did not notice any errors but could not be sure because [he] did not understand all of the legalese in it." Boches saw no errors either. He "assured [defendant] that everything was in order, even though he was aware of [defendant's] criminal history."

¶ 24        The State indicated its intent to call Boches, who would be arriving shortly. The court stood in recess. After the recess, the parties agreed to proceed "based on the affidavit" of Boches. The court stated that "[i]t's a very narrow issue that's being presented here. I think it's appropriate to proceed with the hearing via affidavit, there being no objection from the defense." After submitting Boches' affidavit, the State rested. The court took judicial notice of the sentencing hearing transcript. Defendant presented no rebuttal.

¶ 25    Defense counsel argued that Boches never sent defendant a copy of the PSI, which counsel said was "40 or 50 pages long,"[1] and gave it to him only "moments before the sentencing hearing." Counsel also argued that "Mr. Boches and Mr. Tapia had discussed Mr. Tapia's criminal background prior to this court date, and Mr. Boches was aware of the misdemeanor from Georgia, and Mr. Boches indicated to Mr. Tapia that he didn't notice any errors as issues." Counsel argued that Boches was ineffective for not going through and reviewing the PSI with defendant. Counsel argued that this error caused the trial court to rely on erroneous information in reaching the sentence, which was "obviously" damaging for defendant.

¶ 26    When the case was called for hearing, the trial court asked the State if it was conceding that the Georgia convictions were of misdemeanors. The State said, "[t]hat's correct, judge." Next, the trial court asked defense counsel if defendant was still maintaining that when "the sentence was held, Mr. Boches failed to review the presentence investigation report with the defendant." Counsel initially said yes, but then said, "I'm sorry. Not that he failed to complete the two. He did–in the affidavit he stated that he did review it with him. He didn't review it with him. He gave him a copy of the PSI just minutes before the sentencing hearing went, and that was the time he was given to review the PSI and that was it." Counsel indicated that defendant had no other evidence to present and was resting on the pleadings and defendant's affidavit. The State raised no objection to this procedure.

¶ 27    In response, the State first addressed the amended petition's claim that Boches had been ineffective for failing to object to the trial court's consideration of the Iowa arrest warrant for defendant. The State noted the judge's statement that he was "not considering anything at all, in aggravation or otherwise," in relation to the Iowa case, as defendant was presumed innocent in that case. Next, the State addressed Boches' alleged ineffectiveness for failing to recognize and point out that the two Georgia convictions were of misdemeanors, not felonies. The State noted that defendant had never asserted that he ever told Boches that the two convictions were of misdemeanors. Boches had not represented defendant in the Georgia case, so Boches had had no way of knowing that the convictions were of misdemeanors; therefore defendant had not met his burden of proving deficient performance. Further, defendant had shown no prejudice from Boches' alleged carelessness. Defendant had been sentenced to three years less than the cap. In reply, defendant argued that Boches had had a duty to discuss the Georgia convictions with defendant and a more general duty to research the issue "if there were question marks."

¶ 28    After taking the case under advisement, the trial court denied the amended petition. The court explained that at a third-stage evidentiary hearing the defendant bears the burden of making a substantial showing of a constitutional violation. The court summarized defendant's position, that as a result of counsel's deficient performance in failing to discover and correct the error in the PSI regarding the Georgia convictions, Judge Phillips "erroneously relied upon those convictions being felonies" in arriving at his sentence. The court said that it had reviewed the affidavits as well as the transcript of the sentencing hearing. The court observed that during the sentencing hearing Judge Phillips asked both the State and defendant if they had reviewed

---

[1]The report, without attachments, consists of 13 pages.

the PSI and both sides said they had. They were asked if they had any additions, corrections, or deletions and neither side indicated that they had any. The court then recounted the evidence in aggravation and mitigation presented at the sentencing hearing. The court noted that the State called Paulsen to talk about the injuries "to the complaining witness or witnesses." On behalf of defendant, defendant's mother described how defendant would help her get to and from doctor appointments. Defendant's father testified to how, despite defendant's struggles in school, he was a "hard working and earnest young fellow that was trying to turn his life around." The defense then, remarkably, called Martinez. The court summarized defendant's statement in allocution, where he mentioned his prior incarceration, his difficulty finding work because of his past, and his plea for leniency. The court then observed that "[w]hat's important to note is there is nothing mentioned about the case in Georgia being a misdemeanor, not a felony." The court noted that at sentencing the State referenced additional information in the PSI regarding defendant's prior convictions, including a 2000 firearm case; a 2001 case for criminal damage to property, which resulted in a penitentiary sentence; a 2002 case for aggravated battery to a police officer; and cases for driving under the influence of alcohol.

¶ 29     The court noted that, while Judge Phillips "absolutely" referred to the Georgia case, he also considered the rest of defendant's criminal history, including a prior felony conviction in Illinois, his failure to successfully complete probation, and a sentence to the Department of Corrections. The court noted also that Judge Phillips expressly declined to consider the active arrest warrant from Iowa. The court found that defendant had not proven that Boches' performance was objectively unreasonable. The court then went on to hold that, even assuming that defendant had proven deficient performance, it could not say that the result of the proceedings would have been different "had Mr. Boches said, 'well, judge, that probation isn't for felonies, it's for misdemeanors.' "

¶ 30     The court concluded, "I cannot find that the defendant has met their [*sic*] burden of making a substantial showing of a constitutional violation, and defendant's post-conviction petition is denied." Defendant timely appealed.

¶ 31                                    II. ANALYSIS

¶ 32     On appeal, defendant argues that the trial court erred in denying his amended postconviction petition, because the evidence proved both that Boches' failure to recognize and correct the PSI error concerning the Georgia convictions was objectively unreasonable and that defendant was prejudiced thereby. Defendant argues that, based on discussions with Boches prior to the date of his sentencing, Boches "was aware of the true nature of his Georgia convictions." Defendant no longer contends that Boches was ineffective for failing to object to the reference to the open arrest warrant from Iowa. The State responds first by asserting that defendant, having been given proper admonishments under Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001), procedurally defaulted his claim because he did not raise it, as he could have, in a postjudgment motion or a direct appeal. Alternatively, the State argues that defendant failed to prove that Boches' performance was deficient. Further, the State argues that, even if Boches' performance was deficient, defendant failed to establish that he was prejudiced.

- 8 -

¶ 33     Both parties assert that a denial of a postconviction petition following a third-stage evidentiary hearing is reviewed for manifest error, citing *People v. Coleman*, 183 Ill. 2d 366, 384-85 (1998). However, in this case, the trial court heard no testimony during the hearing. The court considered the pleadings and the transcript of the sentencing hearing and heard arguments. No fact finding or credibility determinations were involved. Additionally, the court did not preside over defendant's plea and sentencing and hence had no special expertise or familiarity with those proceedings. Under these circumstances, our review is *de novo*. *People v. English*, 2013 IL 112890, ¶ 24; *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 34     The Unified Code of Corrections requires the sentencing court to "consider any presentence reports." 730 ILCS 5/5-4-1(a)(2) (West 2002). While it is the duty of the probation officer to prepare a presentence report, it is the duty of the parties to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the presentence report. *People v. Meeks*, 81 Ill. 2d 524, 533 (1980).

¶ 35     We first address the State's forfeiture claim. As the State points out, defendant did not file a postjudgment motion or a direct appeal in this case. Ordinarily, forfeiture bars a postconviction claim that could have been, but was not, raised on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 453 (2005). Because defendant entered a partially negotiated plea, he could not have moved to reconsider his sentence on the sole ground that it was excessive or sought appellate relief on that ground. *People v. Linder*, 186 Ill. 2d 67, 74 (1999) (defendant who agrees to a potential sentencing range implicitly concedes that a sentence imposed within the range cannot be excessive). Defendant's claim does not involve mere excessiveness, but instead alleges that, due to counsel's deficient performance, the trial court considered inaccurate information, resulting in a longer sentence than defendant would have otherwise received. In the trial court, the State argued that defendant had waived this claim by remaining silent after he had an opportunity to review the PSI.

¶ 36     On appeal, the State argues that defendant has forfeited his claim of ineffective assistance of counsel because the facts and record for this claim existed when he could have taken a direct appeal. *Blair*, 215 Ill. 2d at 443-44. As our supreme court recently explained:

> "The common law doctrine of waiver bars a claim that could have been presented previously. See *People v. Blair*, 215 Ill. 2d 427, 443 (2005). Waiver is distinct from forfeiture, however. While forfeiture applies to issues that could have been raised but were not, waiver is the voluntary relinquishment of a known right. *Blair*, 215 Ill. 2d at 443-44 & n.2. In *Blair*, this court noted, ' "[w]hereas forfeiture is the failure to make the timely assertion of the right, waiver is the 'intentional relinquishment or abandonment of a known right.' " ' *Blair*, 215 Ill. 2d at 444 n.2, quoting *United States v. Olano*, 507 U.S. 725, 733, 123 L. Ed. 2d 508, 519, 113 S. Ct. 1770, 1777 (1993).
>
> In determining whether a legal claim has been waived, courts examine the particular facts and circumstances of the case. See *Edwards v. Arizona*, 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1884 (1981). Waiver principles are construed liberally in favor of the defendant. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848-49 (7th Cir. 2005)." *People v. Phipps*, 238 Ill. 2d 54, 62 (2010).

¶ 37    Construing waiver liberally, it cannot be said that defendant waived his current claim, because there is no indication that he knowingly gave up his claim of ineffective assistance of counsel based on counsel's failure to correct an error in the PSI. However, because the support for the claim existed, defendant could have raised it in a postjudgment motion or a direct appeal. Because he did not, the issue has been forfeited. *English*, 2013 IL 112890, ¶ 22.

¶ 38    In his reply brief, defendant claims that the State has forfeited its claim of procedural default because "the State never alleged during the entire course of the post-conviction proceedings below that the petitioner procedurally defaulted his ineffective assistance claim by failing to file a post-plea motion or a direct appeal." We disagree. We note that the State argued waiver in the trial court and has not indicated that it wishes to forgo the affirmative defense of procedural default on appeal. *Blair*, 215 Ill. 2d at 456.

¶ 39    Defendant argues in his reply brief that he was "not required to seek to vacate his plea as his only available remedy for counsel's deficient representation." He argues that, rather than claiming that his "sentence is excessive *per se*," he is alleging "that the *procedures* used to determine his sentence were improper because, due to ineffective representation by plea counsel, the trial judge relied on inaccurate and unreliable information when determining his sentence" (emphasis in original). Defendant then provides a "see" cite to *People v. Economy*, 291 Ill. App. 3d 212 (1997). Defendant's reliance on *Economy* is misplaced. In *Economy*, the defendant entered a negotiated plea, seeking entry into the Treatment Alternatives for Safe Communities (TASC) program. The trial court sentenced the defendant to prison. The defendant filed a motion to reconsider his sentence, which was denied. On appeal, the State argued that all of the defendant's claims were waived. The appellate court agreed on all claims except the defendant's claim that the trial court misapplied the law by considering improper sentencing factors, as that claim was not merely that the sentence was excessive and the claim was included in his motion to reconsider his sentence. *Id.* at 219 (citing *People v. Catron*, 285 Ill. App. 3d 36, 37-38 (1996)). The appellate court reached the merits of that claim and rejected it. Of course, *Economy* predates *Linder*, where the supreme court held that where the sentence imposed is within the agreed range the defendant may not challenge his sentence without first moving to withdraw his guilty plea. *Linder*, 186 Ill. 2d at 74.

¶ 40    Defendant also cites *People v. Doguet*, 307 Ill. App. 3d 1 (1999), for the proposition that, despite his negotiated plea, he can challenge the trial court's consideration of improper or unreliable evidence at sentencing and request a new sentencing hearing. Defendant acknowledges that the appellate court did not address the merits of this issue in *Doguet*, however, because the case was remanded "for the trial court to admonish defendant of his right to file a motion to withdraw his guilty plea and the consequences thereof." *Id*. at 7. The defendant was charged with first-degree murder of his wife. The State agreed to allow him to plead to second-degree murder and dismissed the first-degree-murder charge. The defendant was sentenced to 11 years' imprisonment. The trial court's admonishments were defective because the defendant was told "that if he wanted to appeal his sentence, he would first have to file a motion to reconsider sentence." *Id*. at 3. The defendant filed a motion to reconsider his sentence, which the trial court denied. As part of his motion, defendant claimed that in determining his sentence the trial court improperly relied on a letter, purportedly written by the

victim. At the sentencing hearing, defense counsel objected to the admission of the letter. The letter was purportedly recovered from the defendant's vehicle, was signed by the victim, and "referenced defendant's tendency to beat up his wife." *Id*. This court said, in *dicta*, that the defendant's argument that he was deprived of a fair sentencing hearing by the trial court's improper consideration of the letter "compels judicial review." *Id*. at 7.

¶ 41 Finally, defendant relies on *People v. Hermann*, 349 Ill. App. 3d 107 (2004), for the proposition that he was not required to file a motion to withdraw his plea where he alleges not that his sentence was excessive but that the trial court improperly applied the law. In *Hermann*, the defendant entered a negotiated guilty plea to two counts of criminal damage to property. At a restitution hearing, the trial court ordered restitution on a dismissed count. The defendant filed a motion to reconsider the sentence, which was denied. However, the defendant's attorney failed to file a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Nov. 1, 2000). Relying on *People v. Janes*, 158 Ill. 2d 27 (1994), this court reversed the denial of the defendant's motion to reconsider and remanded the case so that the defendant could file a new postjudgment motion and for a hearing in compliance with Rule 604(d). In also determining that the defendant could challenge her sentence by filing only a motion to reconsider, this court said:

> "The motion did not allege that the sentence was excessive and was not an improper attempt by defendant to avoid or modify the terms of her plea agreement with the State. Instead, defendant argued that the trial court was without statutory authority to order restitution on the dismissed charge. Also, defendant asserted that the plea agreement entered into by the parties did not require the payment of restitution on the dismissed charge. Under these circumstances, Rule 604(d) did not require defendant to file a motion to withdraw her guilty plea and to vacate the judgment. [Citations.] Hence, dismissal of the appeal is not warranted." *Hermann*, 349 Ill. App. 3d at 114.

¶ 42 In each of the cases relied upon by defendant, the alleged error, whether it related to an improper application of the law, an improper receipt of evidence, or the imposition of a sentence that was not agreed upon, there was a timely objection and the issue was raised in a postjudgment motion. None of these cases helps defendant's cause. Defendant did not file a postjudgment motion. Instead he waited more than two years to raise the claim in his *pro se* petition.

¶ 43 The State argued below that defendant had the opportunity to review the PSI and through his silence waived the issue. The State did not cite any cases in support of this proposition. However, our research led us to *People v. Harden*, 221 Ill. App. 3d 993 (1991), where the defendant made an argument similar to defendant's argument in this case. There, after a bench trial the defendant was convicted of armed robbery and sentenced to an extended term of 60 years' imprisonment. He filed a postconviction petition, alleging in part that he was denied effective assistance of counsel because trial counsel did not apprise the sentencing court that a prior federal conviction "had apparently been vacated." *Id*. at 994-95. The defendant's petition was dismissed without an evidentiary hearing. The First District affirmed, holding that the defendant had waived the issue. *Id*. at 995. The court stated:

"It is significant that defendant did not allege he was unaware of the district court's 1976 order regarding his Federal conviction. It is clear that defendant could have raised this issue in the direct appeal, but he did not do so. Defendant did present a related issue, that the extended-term sentence based upon his prior Federal conviction was improper. This court held that issue was waived because of defendant's failure to object in the trial court. The supreme court concluded that we correctly held that defendant had waived any question on the propriety of the imposition of an extended term based on his Federal conviction." *Id*. at 995-96 (citing *People v. Harden*, 113 Ill. 2d 14, 18 (1986)).

¶ 44    In *Harden*, as in this case, the sentencing court received in evidence a PSI. The report, like here, had been examined by the defendant. As in *Harden*, defendant does not claim that he was unaware of the true nature of the Georgia convictions. To the contrary, he argues that he was aware and so informed Boches prior to the date of the sentencing hearing. The *Harden* sentencing court "observed that the defendant's criminal record showed a Federal conviction for 'Armed Bank Robbery.' " *Harden*, 113 Ill. 2d at 17. The supreme court noted that, during the sentencing hearing, the defendant, except by requesting a minor deletion, did not object to the admission of the PSI or to its reference to the defendant's having had a federal conviction of armed bank robbery. *Id*. at 18-19. By not objecting, the defendant did not preserve the issue. *Id*. at 19.

¶ 45    It is clear that under Illinois law a presentence report is generally a reliable source for the purpose of inquiring into a defendant's criminal history. *People v. Williams*, 149 Ill. 2d 467, 491 (1992). It is equally clear that "[*a*]*ny* claimed deficiency or inaccuracy within a presentence report must first be brought to the attention of the sentencing court, and a failure to do so results in *waiver* of the issue on review." (Emphases added.) *Id*. at 493. As the court in *Williams* made clear, a defendant has an obligation to notify the sentencing court that he believes that the presentence report is deficient. *Id*. In this case, defendant concedes that he reviewed the PSI prior to the sentencing hearing. While defendant's affidavit provides some explanation for his failure to catch the error when he reviewed the PSI, that he "did not understand all of the legalese in it," there is no explanation for defendant's failure to speak up when the sentencing judge specifically referenced "the felonies in the state of Georgia." For postconviction purposes, we conclude that defendant has forfeited the issue.

¶ 46    Whereas waiver precludes review, forfeiture permits review under the plain-error doctrine. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011) (citing *People v. Townsell*, 209 Ill. 2d 543, 547-48 (2004)). But even if we were to relax the rules of forfeiture, defendant's claim of ineffective assistance of counsel is completely without merit. To be entitled to relief, a defendant has the burden to prove a substantial deprivation of a constitutional right. *Pendleton*, 223 Ill. 2d at 471. In proving ineffective assistance of counsel, he must first overcome a strong presumption that counsel provided competent representation. *Strickland*, 466 U.S. at 689. We understand the trial court's decision to docket defendant's *pro se* petition. In his petition, defendant alleged that Boches "was ineffective in not correcting these facts before the court or *going over the PSI* with petitioner to make corrections." (Emphasis added.) This assertion was not clearly rebutted by the trial court record. It is worth noting that the trial court allowed the

- 12 -

amended petition to proceed to a third-stage hearing without first requiring postconviction counsel to file "affidavits, records, or other evidence supporting its allegations." See 725 ILCS 5/122-2 (West 2008). When counsel finally filed defendant's affidavit in support of the petition it became clear that no hearing was necessary. Contrary to defendant's arguments on appeal, there was no clear evidence that Boches knew that the PSI was inaccurate before he learned of defendant's petition. Boches' affidavit essentially mirrors what defendant said in his affidavit. Boches and defendant agree that they discussed defendant's background before the sentencing hearing and that Boches reviewed the PSI and asked defendant to review it for errors. Defendant stated in his affidavit, "I did not notice any errors but could not be sure because I did not understand all of the legalese in it." The information regarding the Georgia convictions is on page seven of the PSI. As the trial court explained, defendant had a substantial criminal history before his convictions in Georgia. There is no question that defendant knew the difference between a felony and a misdemeanor. While competent representation clearly requires that defense counsel reasonably consult with their clients, communication is a two-way street. As the supreme court has explained, information given by a defendant to defense counsel is critical in determining the reasonableness of counsel's investigation. *People v. Thomas*, 164 Ill. 2d 410, 425 (1995) (citing *Strickland*, 466 U.S. at 691). The record in this case reveals that prior to the sentencing hearing defendant and Boches discussed his criminal history. The record also reveals that defendant and Boches had significant discussions prior to defendant's decision to accept the plea offer. It is based on these discussions that defendant argues that Boches "was aware of the true nature of his Georgia convictions." However, defendant was given a copy of the PSI to review prior to the sentencing hearing, and he told Boches that he "did not notice any errors." Defendant did not allege in his affidavit that he had insufficient time to review the report. Nor did he allege that he told Boches that he did not understand the contents of the report. Defendant is correct in arguing that the allegation that his criminal history was known to Boches prior to the sentencing hearing was not contradicted by Boches' own affidavit. However, the information that defendant allegedly provided to Boches on the Georgia convictions was contradicted by the PSI, which defendant said was accurate. This discrepancy explains Boches' comment to the court during his sentencing argument that he was not sure about the "probation item" from Georgia. Defendant also fails to explain his silence when the trial court made a specific reference to the "felonies in the State of Georgia." The trial court admonished defendant pursuant to Rule 605(c) that if he wished to appeal he had to file within 30 days a "written motion asking to have the judgment vacated and for leave to withdraw your plea of guilty" and that any issue or claim of error not raised would be deemed waived. Defendant said he understood.

¶ 47     As the supreme court has explained, "[t]he issue of incompetency of counsel is always to be determined from the totality of counsel's conduct." *People v. Mitchell*, 105 Ill. 2d 1, 15 (1984). In this case, defendant was originally facing a sentence of 12 to 60 years. See 730 ILCS 5/5-8-4(a)(i) (West 2002) (where one of the charges is a Class X felony and the defendant inflicts severe bodily injury, a consecutive sentence is mandatory). Defendant also faced two counts of aggravated criminal sexual abuse in another case, convictions of which, upon

- 13 -

discharge from the penitentiary, would have required defendant to register as a sex offender. See 730 ILCS 150/1 *et seq*. (West 2002). Boches pursued plea negotiations and successfully minimized defendant's sentencing exposure. We find that defense counsel's performance was objectively reasonable. Boches would have had no way of knowing that the Georgia conviction information was inaccurate other than by asking defendant to review the information in the PSI, which is precisely what he did. As we have stated, defects in a presentence report may be waived. See *People v. Madej*, 106 Ill. 2d 201, 212 (1985). We cannot say that any failure to further check the records of these convictions was conduct falling below an objective standard of reasonableness. *Harden*, 221 Ill. App. 3d at 997.

¶ 48 Finally, even if we were to find that Boches was deficient for failing to correct the PSI, defendant has failed to prove any resulting prejudice. Under *Strickland*, proof of prejudice cannot be based on mere conjecture or speculation. *People v. Palmer*, 162 Ill. 2d 465, 481 (1994). Instead, defendant was required to show that correcting the Georgia conviction information "would have likely resulted in a lesser sentence." *People v. Williams*, 272 Ill. App. 3d 868, 880 (1995). The sentencing court's reference to the Georgia case was nothing more than a passing reference and took up one line of seven transcript pages of its findings. The court was merely observing that defendant continued to violate the law after his felony conviction in Illinois and sentence to the Department of Corrections. We further note that in its sentencing argument, while the State made reference to the Georgia convictions, it did not emphasize that they were of felonies. The sentencing court noted that, while they were of "felonies," defendant received a "probation" sentence. It was defendant's burden to prove more than the possibility that the error prejudiced him. Defendant did not carry his burden of proving prejudice.

¶ 49                                III. CONCLUSION

¶ 50 Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 51 Affirmed.

- 14 -