NOTICE
Decision filed 03/23/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190095-U

NO. 5-19-0095

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 15-CF-199 |
| | ) | |
| JACK THOMAS JR., | ) | Honorable |
| | ) | Brian D. Lewis, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction and sentence are affirmed where defendant waived his right to challenge the initial aggressor jury instruction (IPI Criminal No. 24-25.09) given at trial, and the trial court did not abuse its discretion in sentencing defendant to 65 years in prison.

¶ 2    Following a jury trial in Williamson County, defendant, Jack Thomas Jr., was convicted of first degree murder for his role in the April 20, 2015, shooting death of Michael A. Reed. The trial court sentenced defendant to 65 years in prison—40 years for the offense plus the 25-year firearm enhancement. On appeal, defendant challenges his conviction and sentence, asserting that the trial court abused its discretion (1) by giving the initial aggressor use of force instruction (IPI Criminal No. 24-25.09) to the jury and (2) by imposing an excessive sentence. For the following reasons, we affirm.

1

¶ 3                    I. Background

¶ 4    On the evening of April 20, 2015, police arrested defendant in connection with the shooting death of Reed. The next day, on April 21, 2015, the State charged defendant by information with three alternative counts of first degree murder under the Criminal Code of 2012 (Code) (720 ILCS 5/9-1(a)(1), (a)(2) (West 2014)), which included intentional (*id*. § 9-1(a)(1)), knowing (*id*.), and strong probability (*id*. § 9-1(a)(2)) theories of murder. Prior to trial, defendant filed a notice of intent to assert self-defense (see *id*. § 7-1).

¶ 5                    A. Trial Proceedings

¶ 6    On May 8, 2018, following a mistrial due to juror misconduct, this case proceeded to a nine-day jury trial. The evidence generally established that, on the evening of April 20, 2015, defendant, armed with a gun, drove his pickup truck to the residence of his ex-girlfriend, Jessica Shadowens, in Marion, Illinois. Shortly after defendant arrived at Shadowens' residence, an altercation occurred between defendant and several other individuals. This incident led to the shooting of Reed. Reed initially survived the shooting. However, he later died from his injuries at a local hospital. Medical records confirmed that Reed sustained bullet wounds to his chest, right arm, left side, and back. Police recovered several spent shell casings from the scene of the shooting and later recovered a projectile from Reed's body. The parties stipulated that (1) defendant shot Reed with a gun during the altercation, (2) defendant left the gun used in the shooting at a friend's residence in Carmi, Illinois, where it was later recovered by police, and (3) the same gun police recovered fired the projectile recovered from Reed's body and spent shell casings recovered from the scene.

¶ 7    At the jury instruction conference, the parties agreed to the Illinois Pattern Jury Instructions (IPI) relating to first degree murder and second degree murder based on provocation and belief in

justification. However, a dispute arose over two proposed instructions concerning the use of force. Defense counsel initially objected to the State's proposed Instruction Number 25, drafted in accordance with IPI Criminal No. 24-25.09 ("Initial Aggressor's Use Of Force").[1] Defense counsel subsequently commented that he "would object to the introduction of State's Instruction Number 25 [IPI Criminal No. 24-25.09] unless the [trial] court also agree[d] that IPI [Criminal No.] 24-25.09-X [("Non-Initial Aggressor—No Duty To Retreat")] should come in, which states that a person who is [*sic*] not initially provoked the use of force against himself has no duty to \*\*\* attempt to escape danger before using force against the aggressor." Following arguments of counsel, the trial court, over the State's objection, ruled in favor of giving both proposed instructions. A handwritten notation in the margin of defendant's proposed Instruction Number 1 specifically stated "over [the State's] objection"; the State's proposed Instruction Number 25 contained no such notation relating to defense counsel's objection.

¶ 8        After closing arguments and jury deliberations, the jury found defendant guilty of first degree murder. Thereafter, defense counsel filed a motion for a new trial, arguing, *inter alia*, that the trial court erred "in allowing the initial aggressor instruction to be given to the jury during jury instructions." Following a December 19, 2018, hearing, the trial court denied defendant's motion for new trial, and the case proceeded to sentencing.

¶ 9                                      B. Sentencing

¶ 10        At the start of the sentencing hearing, the trial court took judicial notice of the trial evidence and the presentence investigation report (PSI). The PSI reflected that defendant was 34 years old

---

[1]IPI Criminal No. 24-25.09 states: "A person who initially provokes the use of force against himself is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

at the time of the offense. Defendant had a 1999 misdemeanor conviction for consumption of alcohol by a person under 21. Defendant also had a 2003 federal conviction for conspiracy to distribute more than 500 grams of methamphetamine. The federal court originally sentenced defendant to 96 months in prison but later reduced the sentence to 64 months. Upon his release in September 2007, defendant began serving a five-year term of supervised release. However, in November 2010, defendant returned to prison after violating the terms of his supervised release by committing the offense of obstructing a peace officer and testing positive for hydrocodone. Thereafter, defendant served nine months in prison followed by one year of supervised release.

¶ 11    The PSI also reflected that defendant earned his general education diploma while in prison. In addition, defendant was single and the father of five children between the ages of 8 and 21. Defendant held various employment positions as a general laborer and more recently worked as a "Spudder Hand" on an oil rig in 2014.

¶ 12    Defendant reported a history of alcohol and drug abuse since he was approximately 13 years old. Defendant admitted to using marijuana, cocaine, and methamphetamine. Defendant claimed that he remained sober after his methamphetamine arrest in 2002, until he relapsed on heroin following a breakup with his girlfriend in 2013. Defendant also reported that he again started using methamphetamine in 2014.

¶ 13    The State presented no evidence in aggravation. Defendant called two family members to testify in mitigation. Mark Craddcock, defendant's mother's boyfriend, testified that he knew defendant for more than 27 years, "since [defendant] was a little boy." Craddock never observed violent behavior from defendant, and he believed that defendant was a kind-hearted person who loved his family and his children. He also testified that defendant was a hard worker. He acknowledged that defendant had a history of abusing drugs.

4

¶ 14    Next, Susie Miller, defendant's aunt, testified that she knew defendant for more than 37 years, and she described her relationship with defendant as "really close." Miller testified that she and defendant were "in addiction." She also testified that she never observed violent behavior from defendant.

¶ 15    Following defendant's allocution statement, the State read victim impact statements from Reed's mother and grandmother into the record. Although the State believed that defendant was eligible for an extended term sentence, it recommended that the trial court sentence defendant to 85 years in prison, 60 years for the offense plus the 25-year firearm enhancement. The State asserted that defendant had a history of delinquency and showed no remorse. The State expressed the following:

> "The reason that I believe that he is eligible for that extended term and for that amount of years would be because of the factors that you should consider, and those factors would be that he has the history of delinquency. He has a criminal conspiracy for methamphetamine. He was a purveyor of death. He was placed in the federal prisons for eight years. It was commuted down to five years and four months. And he had five years of mandatory supervised release for conspiracy to distribute more than 500 grams of a mixture and substance containing methamphetamine ***."

In addition, because defendant was in a motor vehicle at the time of the offense, the State argued that defendant committed the offense while in a vehicle used for public transportation as an additional factor in aggravation.

¶ 16    Defense counsel, in contrast, requested a minimum sentence, arguing that defendant would be approximately 76 years old after serving a 20-year sentence for the offense plus the mandatory

25-year firearm enhancement. Defense counsel further argued that "incarceration is meant to punish, but it's also meant to rehabilitate."

¶ 17 Prior to pronouncing the sentence, the trial court took a 30-minute recess to contemplate its ruling. When the hearing resumed, the trial court stated that it considered the trial evidence, PSI, history, character and attitude of defendant, arguments of counsel, defendant's allocution statement, and factors in aggravation and mitigation. After briefly addressing the trial evidence, the trial court commented that defendant's criminal history was "far shorter" than most defendants that the trial court sees daily. Agreeing with the parties, the trial court found that the 25-year firearm enhancement was mandatory. The trial court further commented that defendant's actions forever changed many lives and that Reed's mother will never get over the loss of her son. The trial court sentenced defendant to 65 years in prison—40 years for the offense and the 25-year mandatory firearm enhancement.

¶ 18 On January 18, 2019, defendant filed a motion to reconsider sentence. Defendant alleged, *inter alia*, that his sentence was "excessive of the circumstances involved and will cause undue hardship on the State, the [d]efendant, and his dependents." On February 22, 2019, the trial court denied the motion to reconsider sentence.[2] Defendant timely appealed.

¶ 19                                II. Analysis

¶ 20 On appeal, defendant first contends that the trial court abused its discretion by giving the initial aggressor instruction (IPI Criminal No. 24-25.09), where the State presented no evidence to show that defendant was an initial aggressor. The State responds that defendant waived the issue by withdrawing his objection and inviting the trial court to give both the initial aggressor and

---

[2]The record on appeal contains a minute record that reflects the trial court "reviewed" defendant's motion to reconsider sentence and denied the motion. Neither a transcript of the proceeding nor a February 22, 2019, order denying the motion is included in the record.

noninitial aggressor instructions. Alternatively, the State asserts that the trial court properly instructed the jury.

¶ 21    Waiver and forfeiture of issues are distinct doctrines. *People v. Hughes*, 2015 IL 117242, ¶ 37. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of that right. *People v. Phipps*, 238 Ill. 2d 54, 62 (2010). In determining whether a claim is waived, the court will examine the particular facts and circumstances of the case. *Id*.

¶ 22    "In the course of representing their clients, trial attorneys may (1) make a tactical decision not to object to otherwise objectionable matters, which thereby waives appeal of such matters, or (2) fail to recognize the objectionable nature of the matter at issue, which results in procedural forfeiture." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011). "Plain error review only applies to cases involving procedural forfeiture, and not those that involve affirmative acquiescence." *People v. Ortega*, 2021 IL App (1st) 182396, ¶ 87. Waiver principles are construed liberally in favor of the defendant. *People v. Tapia*, 2014 IL App (2d) 111314, ¶ 36.

¶ 23    Here, defendant contends that the State's waiver argument is premised on an unreasonable interpretation of defense counsel's comment when viewed in the context of the jury instruction conference. In support, defendant asserts that defense counsel's comments were merely a suggested alternative should the instruction be given over his objection. We disagree.

¶ 24    While it is undisputed that defense counsel at first objected to the State's instruction at the jury instruction conference, defense counsel subsequently commented that he "would object to the introduction of State's Instruction Number 25 [IPI Criminal No. 24-25.09] unless the court also agrees that IPI [Criminal No.] 24-25.09-X [("Non-Initial Aggressor—No Duty To Retreat")] should come in, which states that a person who is [*sic*] not initially provoked the use of force

against himself has no duty to \*\*\* attempt to escape danger before using force against the aggressor." With that said, defense counsel effectively relieved the trial court of ruling on defendant's objection so long as the trial court agreed to give the noninitial aggressor instruction. After the trial court agreed to give both instructions—exactly as defense counsel requested—the trial court had no further reason to rule on defense counsel's objection. Accordingly, the trial court did not rule on defense counsel's objection.

¶ 25    We also find no support in the transcript of the jury instruction conference and the common law record for defendant's contention that the trial court instructed the jury as to the initial aggressor instruction over defense counsel's objection. To the contrary, the transcript demonstrates that the trial court ruled only *over the State's objection* that the jury would be instructed in accordance with both IPI instructions. Specifically, the handwritten notation in the margin of defendant's proposed Instruction Number 1 specifically stated "over [the State's] objection," and the State's proposed Instruction Number 25 contained no such notation relating to defense counsel's objection. Therefore, the common law record is consistent with the trial court's ruling.

¶ 26    Lastly, we note that defendant's posttrial motion merely stated that "[t]he [c]ourt erred in allowing the initial aggressor instruction to be given to the jury during jury instructions." Neither the posttrial motion nor the corresponding memorandum expressly stated that the trial court erred in overruling defense counsel's objection. Additionally, at the hearing on the posttrial motion, defense counsel merely expressed his belief that "because the initial aggressor instruction was allowed, it proved to confuse the jury."

¶ 27    Based on the foregoing, defense counsel abandoned his objection to the State's request for the initial aggressor instruction by prompting the trial court to give both instructions and, unlike the State, accepted the trial court's ruling without objection. Therefore, the claim of error regarding

the challenged jury instruction is waived. As such, we need not consider defendant's request for plain error review. See *People v. Dunlap*, 2013 IL App (4th) 110892, ¶ 12 (plain error does not apply to issues that have been affirmatively waived).

¶ 28    Next, defendant argues that the trial court abused its discretion by sentencing defendant to a total aggregate term of 65 years in prison. Defendant does not challenge the validity of the 25-year firearm enhancement. Instead, defendant argues that the 40-year prison term for the offense is excessive and not considerate of his rehabilitative potential.

¶ 29    A criminal defendant's sentence must strike a balance between the seriousness of the offense at issue and the defendant's potential for rehabilitation. Ill. Const. 1970, art. I, § 11. A trial judge who issues a sentence in a case "is in the best position to consider matters relating to sentencing determinations and is vested with wide discretion in making a reasoned judgment as to the penalty appropriate to the circumstances of each case." *People v. Brown*, 250 Ill. App. 3d 767, 774 (1993). "The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors such as the lack of a prior record, and the statute does not mandate that the absence of aggravating factors requires the minimum sentence be imposed." (Internal quotation marks omitted.) *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94 (quoting *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002)). "A sentence within the statutory guidelines that is alleged to be excessive will not be disturbed on review unless it is manifestly disproportionate to the nature of the offense." *Brown*, 250 Ill. App. 3d at 774. A sentence imposed by the circuit court is entitled to great deference; it will not be

disturbed unless it represents an abuse of the circuit court's discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977).

¶ 30    A first degree murder conviction (720 ILCS 5/9-1 (West 2014)) carries with it a sentencing range of 20 to 60 years in prison (730 ILCS 5/5-4.5-20(a) (West 2014)). The term of imprisonment, as in the present case, may also be subject to an additional 25-year firearm enhancement (see *id*. § 5-8-1(a)(1)(d)(iii)).

¶ 31    Here, defendant received a mid-range sentence of 40 years in prison for the offense, which is within the statutory range. Despite this, defendant argues that his sentence is excessive. In support, defendant argues that "[t]he judge's comments at the sentencing hearing did not indicate any justification for the sentence beyond facts that exist in every first degree murder case." Defendant also argues that the trial court failed to consider defendant's rehabilitative potential. After carefully reviewing the record in its entirety, we are not convinced.

¶ 32    Contrary to defendant's arguments, the trial court specifically expressed that it considered the trial evidence, PSI, history, character and attitude of defendant, arguments of counsel, defendant's allocution statement, and factors in aggravation and mitigation. The trial court took a 30-minute recess to contemplate its ruling prior to pronouncing the sentence. The trial court also expressed that defendant's criminal history was shorter than most defendants and rejected the State's argument in aggravation relating to public transportation.

¶ 33    The trial court heard the testimony of defendant's relatives and considered the arguments of counsel. Given the seriousness of the offense, the mid-range sentence imposed by the trial court is certainly not manifestly disproportionate to the nature of the offense. As such, we reject defendant's arguments that trial court abused its discretion in sentencing defendant.

¶ 34                                    III. Conclusion

¶ 35    Based on the foregoing, we affirm defendant's conviction for first degree murder and his sentence of 65 years in prison.

¶ 36    Affirmed.