2023 IL App (1st) 200309

No. 1-20-0309

Opinion filed March 23, 2023

Fourth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 16402 |
| | ) | |
| STEPHAN MOSLEY, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices Hoffman and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant Stephan Mosley was convicted of unlawful use or possession of a weapon by a felon (UUWF) and sentenced to 10 years' imprisonment. On appeal, he argues that the State failed to prove beyond a reasonable doubt that he possessed a firearm. He also argues that the court committed plain error by sentencing him for a Class 2 felony rather than

a Class 3 felony, as his prior attempted robbery conviction was not a "forcible felony." We affirm the guilty finding but vacate defendant's sentence and remand for resentencing.[1]

¶ 2    Defendant was charged with multiple offenses premised on his possession of a firearm. The State nol-prossed all but one count of UUWF (720 ILCS 5/24-1.1(a) (West 2018)), which charged that defendant committed a Class 2 felony pursuant to section 24-1.1(e) of the Criminal Code of 2012 (Code) (*id.* § 24-1.1(e)), based on his previous conviction for attempted robbery.

¶ 3    At trial, Chicago police officer Arturo Guzman testified that, on October 26, 2018, he worked with a partner, Officer Michael Carrasco. They were plain-clothed and drove an unmarked vehicle. They were not issued body-worn cameras, as they were employed in a gang enforcement unit and required to wear different uniforms. Around 10:40 p.m., they curbed a small SUV for making an illegal U-turn. The vehicle contained a male driver, female front passenger, and two small children in car seats behind the driver's seat. Defendant sat in the rear passenger seat, with a woman on his lap.

¶ 4    Guzman approached the driver, who indicated he did not have a license. Guzman requested he exit the vehicle, then escorted him to the rear of the vehicle. Carrasco spoke with the rear passengers and then approached the rear passenger's side door. Guzman joined him. At Carrasco's request, the woman on defendant's lap exited the vehicle. Carrasco escorted her to the rear of the vehicle. From about two feet away, Guzman observed defendant reach in his waistband with his right hand, remove a black object, and place it on the floor near his right foot. He then exited the vehicle, and Guzman escorted him away.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 5    Guzman attempted to pat defendant down, and defendant resisted. Other officers arrived on the scene, and Guzman requested one of them, Officer Pineda, to check the rear passenger floorboard.[2] Pineda relayed that he discovered a firearm. Guzman attempted to handcuff defendant, who resisted, and officers ultimately took him to the ground and handcuffed him. Pineda showed Guzman the firearm, which was unloaded. Guzman identified the weapon at trial and testified that, when it was recovered, it had rubber bands around the handle but no red tape.

¶ 6    On cross-examination, Guzman testified that the front passenger remained in the vehicle unrestrained when he escorted defendant away. Pineda and other officers were on the scene for a few minutes before Guzman requested Pineda search the floorboard. On redirect examination, Guzman testified that Pineda and the other officers arrived a few minutes after Guzman and Carrasco curbed the SUV.

¶ 7    Carrasco testified that, as Guzman escorted the driver to the rear of the vehicle, Carrasco spoke to the vehicle's other occupants through the open driver's window. He asked for their identifications. Defendant responded that he was 17 years old, did not give his name, and did not provide an identification. Carrasco approached the rear passenger side and opened the door. He ordered defendant and the woman on his lap to exit the vehicle. On his second request, the woman exited, and Carrasco escorted her to the rear of the vehicle. Defendant then exited the vehicle, and Guzman, who had been standing behind Carrasco, escorted him to the front of the police vehicle, parked about 10 feet behind the SUV. As Carrasco and Guzman were moving defendant, Guzman informed Carrasco that defendant dropped a black object in the vehicle. The officers attempted to detain defendant in order to investigate the object he dropped in the vehicle, but he was erratic,

---

[2]Officer Pineda's first name is not included in the report of proceedings.

resisted their attempts to handcuff him, and did not comply with their orders. Pineda and other officers arrived on the scene. Guzman directed Pineda to search the rear passenger side of the vehicle, as he had seen defendant take an object from his waistband and drop it in the vehicle when he exited. Pineda recovered a small black handgun with rubber bands on the handle from the floorboard on the rear passenger side, which Carrasco identified at trial.

¶ 8     On cross-examination, Carrasco testified that defendant did not own the vehicle. Carrasco did not observe a firearm or anything in defendant's waistband as he spoke to defendant through the driver's window, as there was a woman on his lap. Nor did he observe anything in defendant's waistband when he opened the rear passenger door and escorted the woman from the vehicle, as she blocked his view. Carrasco was a few feet from defendant when the woman rose from defendant's lap and was focused on the woman. He denied there was red tape on the firearm when it was recovered.

¶ 9     Pineda testified that defendant was out of the vehicle when he arrived. Pineda approached the passenger side and observed two toddlers in the back seat and a woman in the front seat. He wore a body camera, and footage from the camera was published at trial.

¶ 10    The video footage is included in the record on appeal and has been reviewed by this court. It begins with officers detaining someone near the front of a police vehicle parked behind an SUV. Two other individuals stand near the rear of the SUV. A person whom Pineda identified at trial as defendant can be heard yelling while Pineda stands near the passenger side of the SUV. About three minutes into the video, someone asks Pineda to search the rear passenger side of the vehicle; Pineda testified it was Guzman. Pineda opens the rear passenger door, and two children in car seats are visible. A few seconds later, he says there is a gun. He repeats "gun" several times, dons gloves,

and recovers a red and black object from the floorboard. Pineda closes the door and turns, and officers pin defendant on the ground. Defendant repeatedly yells that he does not have a gun. Pineda manipulates the object, which can be seen to be a firearm with red tape and rubber bands on the handle.

¶ 11    On cross-examination, Pineda testified that he activated his camera fewer than three minutes after arriving. The firearm had red tape on the grip when he recovered it.

¶ 12    The State entered the parties' stipulation that defendant had a prior felony conviction qualifying him for UUWF. Defendant rested without presenting evidence.

¶ 13    Following closing arguments, the jury was excused to deliberate. When they returned with a verdict, defense counsel explained that he had been unable to locate or contact defendant since shortly after the jury began deliberating. The jury found defendant guilty.

¶ 14    Defendant did not appear on the next date, a status hearing. Nor did he appear on the following date, when the court denied counsel's motion for a new trial. The case then proceeded directly to sentencing. In aggravation, the State asserted defendant committed a Class 2 felony with a sentencing range of 3 to 14 years' imprisonment, as he had a 2013 felony conviction for attempted robbery. He also had a 2015 misdemeanor conviction for battery and three prior failures to appear. His whereabouts were unknown. Defense counsel requested the minimum sentence and agreed with the court that the minimum sentence was three years.

¶ 15    The court sentenced defendant *in absentia* to 10 years' imprisonment. In announcing the sentence, the court noted that "not all gun cases are equal," and there were "mitigating factors" in this case, as the firearm was unloaded and "wasn't functional." However, the court also noted that those factors did not "completely mitigate" the fact that defendant possessed a firearm "on the

streets," which could still result in serious harm. The court further stated that defendant had a "violent" background given his misdemeanor battery and felony attempted robbery convictions, and it was concerned for the safety of the community. The court denied counsel's motion to reconsider sentence.

¶ 16     On appeal, defendant first argues that the State failed to prove that he possessed a firearm beyond a reasonable doubt. He notes that Carrasco did not observe him place anything on the floorboard and he did not own the vehicle, which also held three other adults. He further notes that the State presented no fingerprint evidence linking him to the firearm and that Carrasco and Guzman were not wearing body cameras to record the most relevant portion of the encounter, when Guzman saw defendant place an object on the floor.

¶ 17     When a defendant challenges the sufficiency of the evidence at trial, we must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. That standard applies to direct and circumstantial evidence. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 25 (citing *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009)). It is for the fact finder to assess the credibility of the witnesses and the weight to be given their testimony and to resolve conflicts or inconsistencies in the evidence. *People v. Tenney*, 205 Ill. 2d 411, 428 (2002). The fact finder is not required to disregard inferences flowing normally from the evidence or search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *Newton*, 2018 IL 122958, ¶ 24.

¶ 18     Further, the testimony of a single credible witness may sustain a conviction. *People v. Gray*, 2017 IL 120958, ¶ 36. Although a fact finder's credibility determination is not binding, it is

entitled to great deference on review, and we are not to retry the defendant or substitute our judgment for the fact finder's on questions involving the witnesses' credibility or the weight of the evidence. *Id.* ¶ 35. Rather, we may only reverse a conviction where the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.* We will not reverse a conviction merely because there is contradictory evidence or the defendant claims a witness was incredible. *Id.* ¶ 36.

¶ 19    To prove defendant guilty of UUWF, the State was required to show he knowingly possessed a firearm on or about his person and was previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Defendant challenges the sufficiency of the evidence demonstrating that he possessed a firearm.

¶ 20    Possession may be actual or constructive. *People v. Walker*, 2020 IL App (1st) 162305, ¶ 20. Actual possession occurs where a defendant exercises dominion over contraband, such as trying to conceal it or throw it away. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Constructive possession occurs where a defendant knows of the contraband's presence and has immediate and exclusive control over the area where the contraband was found. *Walker*, 2020 IL App (1st) 162305, ¶ 20.

¶ 21    Viewing the evidence here in the light most favorable to the State, we conclude a rational fact finder could find that defendant possessed the firearm. Guzman testified that, from a few feet away, he saw defendant remove a black object from his waistband and place it on the floorboard of the rear passenger seat. Carrasco testified that, as he escorted defendant towards the police vehicle, Guzman told him defendant dropped a black object in the SUV. Shortly thereafter, Pineda recovered a black firearm from the floor of the rear passenger area of the SUV, the area where

Guzman had told him to look and where defendant had been seated. That evidence is sufficient for a fact finder to conclude that defendant exercised dominion over the firearm by removing it from his waistband and placing it on the floor, and thereby had actual possession of the firearm. See *Newton*, 2018 IL 122958, ¶ 24 (the fact finder need not disregard inferences flowing normally from the evidence); *Gray*, 2017 IL 120958, ¶ 36 (the testimony of even a single credible witness may sustain a conviction); *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 33 (if witnesses' testimony is otherwise credible, the State need not present physical evidence, such as fingerprints, linking a defendant to the firearm).

¶ 22     Defendant argues that Guzman's testimony that he observed defendant put the firearm on the floorboard is incredible. He contends that Guzman had incentive to lie because, without that testimony, the State's case would fail, as there was no other evidence connecting defendant to the firearm. In support, he cites *Campbell*, 2019 IL App (1st) 161640, ¶ 27, where we noted, in the context of analyzing a sufficiency of the evidence claim, that an officer's testimony about a defendant dropping contraband should be scrutinized when, without that testimony, the officer's search or seizure of the defendant would be unconstitutional.

¶ 23     Defendant further argues that it is illogical that Guzman saw him place an object on the floorboard but did not act on that information until he told Pineda to search the vehicle several minutes later, despite that children and an unrestrained adult remained in the vehicle. He asserts that Guzman's credibility is also damaged by the facts that (1) he and Carrasco were part of a gang enforcement unit but curbed the SUV for a traffic violation, (2) neither he nor Carrasco recorded the interaction with body cameras, (3) Carrasco did not see him place the weapon on the

floorboard, and (4) Guzman and Carrasco testified there was no red tape on the firearm, contradicting Pineda's testimony and the video.

¶ 24    Defendant's challenge to Guzman's credibility is unavailing. We will not reverse a conviction simply because the evidence is contradictory or a defendant claims a witness is not credible. *Gray*, 2017 IL 120958, ¶ 36. It was the jury's responsibility to weigh the witnesses' credibility in light of any contradictory evidence or challenges to their credibility (*id.* ¶¶ 35-36), and we do not find the record compels the conclusion that no reasonable person could accept Guzman's testimony as true beyond a reasonable doubt.

¶ 25    Guzman and Carrasco testified they were not issued body cameras because their unit wore different uniforms. The jury was entitled to weigh that evidence as it saw fit, just as it was entitled to weigh the evidence that the officers curbed the vehicle for a traffic violation, Carrasco could not see defendant's waistband because of the woman on his lap, and the video showed the firearm in fact had red tape on the handle. Further, the video showed defendant was agitated and resisted the officers' attempts to handcuff him, from which the jury could reasonably conclude Guzman's explanation that he did not act on the suspect contraband until defendant was restrained was true. Ultimately, there was sufficient evidence from which a rational fact finder could find defendant guilty, and his arguments to the contrary are requests that we reweigh the evidence and retry him on appeal. This we may not do. See *id.* ¶ 35. Thus, we affirm the jury's guilty verdict.

¶ 26    Next, defendant argues that he is entitled to a new sentencing hearing. He contends the State failed to prove his 2013 attempted robbery conviction was a forcible felony and thus his UUWF offense was a Class 3 felony rather than an enhanced Class 2 felony with a higher sentencing range.

¶ 27 Defendant acknowledges he failed to preserve this issue for review by objecting at sentencing and raising it in a postsentencing motion. See *People v. Reese*, 2017 IL 120011, ¶ 60 ("To preserve an issue for review, a defendant must object at trial and raise the alleged error in a written posttrial motion."). However, he argues that we may review it under the plain-error doctrine, which allows us to consider forfeited sentencing errors where "the evidence is closely balanced or the error is so fundamental it may have deprived [the] defendant of a fair sentencing hearing." *People v. Smith*, 2016 IL App (1st) 140496, ¶ 5 (citing *People v. Thomas*, 178 Ill. 2d 215, 251 (1997)). He claims the second prong applies here. See *id.* ¶ 15 (finding second-prong plain error where class of offense was erroneously enhanced because underlying conviction was not a forcible felony).

¶ 28 The State contends plain-error analysis does not apply because defendant did not forfeit the issue but, rather, affirmatively waived it when trial counsel agreed during sentencing that defendant was subject to the sentencing range for a Class 2 felony. See *People v. Rios*, 2022 IL App (1st) 171509, ¶ 91 ("waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right"); see also *People v. Tapia*, 2014 IL App (2d) 111314, ¶ 36 ("forfeiture applies to issues that could have been raised but were not, waiver is the voluntary relinquishment of a known right" (internal quotation marks omitted)). We examine the particular facts and circumstances of the case to determine whether a claim has been waived and liberally construe waiver principles in favor of the defendant. *Tapia*, 2014 IL App (2d) 111314, ¶ 36.

¶ 29 We disagree with the State that defendant voluntarily relinquished his right to argue that he should be sentenced in the Class 3 felony sentencing range. The indictment charged that

defendant committed a Class 2 felony based on his attempted robbery conviction. At the sentencing hearing, in aggravation, the State asserted the jury had found him guilty of a Class 2 felony with a sentencing range of 3 to 14 years. There was no discussion regarding whether the predicate attempted robbery felony was in fact a forcible felony or whether the UUWF was a Class 2 or Class 3 offense. Defense counsel merely requested the minimum sentence and agreed with the court that the minimum was three years.

¶ 30 We do not believe that exchange merits finding waiver. Rather, whether defendant was actually subject to the Class 2 felony sentencing range was an issue that could have been raised but was not. He therefore forfeited the issue and may request we review it under the plain-error doctrine. See *id.* Moreover, "waiver is a limitation on only the parties," "sentencing issues are excepted from the doctrine of waiver when they affect a defendant's substantial rights," and we may address an otherwise waived issue to ensure a just result. *People v. Carmichael*, 343 Ill. App. 3d 855, 859 (2003) (whether the defendant's conviction was improperly enhanced because his underlying conviction was not a forcible felony implicated his substantial rights such that it justified reviewing the issue). Thus, we will review defendant's claim for plain error.

¶ 31 The first step in plain-error review is determining whether an error occurred. *Smith*, 2016 IL App (1st) 140496, ¶ 5; see also *People v. Thompson*, 2015 IL App (1st) 122265, ¶ 34 (without error, "there can be no plain error"). We find that an error occurred.

¶ 32 Generally, UUWF is a Class 3 felony with a sentencing range of 2 to 10 years' imprisonment. 720 ILCS 5/24-1.1(e) (West 2018). However, if a person commits UUWF after being convicted of a forcible felony, UUWF is a Class 2 felony with a sentencing range of 3 to 14 years' imprisonment. *Id.* Thus, UUWF is enhanced from a Class 3 to a Class 2 offense when the

defendant has previously been convicted of a forcible felony. *People v. Schultz*, 2019 IL App (1st) 163182, ¶ 17.

¶ 33    Section 2-8 of the Code provides that the following offenses are forcible felonies:

"treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2012).

¶ 34    Although the statute lists robbery as a forcible felony, it does not list attempted robbery, or any attempted crime, as a forcible felony. See *id.* Thus, the question is whether attempted robbery qualifies as a forcible felony under the statute's residual clause as "any other felony which involves the use or threat of physical force or violence against any individual." *Id.* We review issues of statutory interpretation *de novo* (*People v. Belk*, 203 Ill. 2d 187, 192 (2003)) and, when reviewing penal statutes, we review in favor of the accused (*In re Jaime P.*, 223 Ill. 2d 526, 539 (2006)).

¶ 35    An offense may qualify as a forcible felony under the residual clause in one of two ways. *People v. Sanderson*, 2016 IL App (1st) 141381, ¶ 6. First, an offense may qualify where one of the offense's elements is " 'a specific intent' to carry out a violent act." *Id.* (quoting *People v. Thomas*, 407 Ill. App. 3d 136, 139-40 (2011)). Where such intent is found, then every instance of the offense necessarily qualifies as a forcible felony, and it is not necessary to consider the specific circumstances of the offense. *People v. McGhee*, 2020 IL App (3d) 180349, ¶ 59 (citing *Schultz*, 2019 IL App (1st) 163182, ¶ 21). Rather, this approach requires that we perform " 'an analysis of

the elements of the underlying offense to determine whether proof of those elements necessarily entails the use or threat of force or violence against an individual.' " *Id.* (quoting *Sanderson*, 2016 IL App (1st) 141381, ¶ 6); see also *Schultz*, 2019 IL App (1st) 163182, ¶ 22.

¶ 36     "The second way a felony can qualify as a forcible felony, even if a crime does not have violent intent as an element, is if the State proves that 'under the particular facts of this case,' the defendant contemplated the use of force and was willing to use it." *Sanderson*, 2016 IL App (1st) 141381, ¶ 7 (quoting *Belk*, 203 Ill. 2d at 195); *Schultz*, 2019 IL App (1st) 163182, ¶ 23. As the State concedes, this second approach is inapplicable here, as the State presented no evidence regarding the facts of defendant's attempted robbery offense, let alone facts that could be used to infer defendant's intent. See *Sanderson*, 2016 IL App (1st) 141381, ¶ 11. Accordingly, we must apply the first approach to the determination of whether attempted robbery is a forcible felony, *i.e.*, we must consider whether proof of the elements of attempted robbery necessarily entails the use or threat of force or violence against an individual.

¶ 37     The underlying offense at issue here is attempted robbery. 720 ILCS 5/8-4(a), 18-1(a) (West 2012). As noted, robbery is a forcible felony. *Id.* § 2-8. A person commits robbery when he "knowingly takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." *Id.* § 18-1(a). A person commits an attempted offense when, with the intent to commit a specific offense, he takes a substantial step towards committing that offense. *Id.* § 8-4(a). Thus, a person commits attempted robbery if (1) he intended to take property from the person or presence of another by the use of force or by threatening the imminent use of force and (2) he took a substantial step toward that offense.

¶ 38    We conclude attempted robbery is not a forcible felony under the residual clause of section 2-8, as no element of the offense necessarily entails that the defendant used or threatened force or violence against another. See *Sanderson*, 2016 IL App (1st) 141381, ¶ 6 (an offense is a forcible felony if its elements necessarily entail use or threat of force or violence). In undertaking this analysis, the question is whether one could violate the attempted robbery statute without " 'the use or threat of physical force or violence' " within the meaning of section 2-8. See *Schultz*, 2019 IL App (1st) 163182, ¶ 41. We conclude that one could, finding persuasive the United States Supreme Court's decision in *United States v. Taylor*, 596 U.S. ___, 142 S. Ct. 2015 (2022), which recently illustrated how attempted robbery can be committed without using, attempting to use, or threatening violence.[3]

¶ 39    In *Taylor*, the defendant unsuccessfully attempted to commit a robbery, during which his co-offender shot a man. *Id.* at ___, 142 S. Ct. at 2019. The defendant pleaded guilty to violating the Hobbs Act (18 U.S.C § 1951 (2018)) and using a firearm in furtherance of a "crime of violence" (*id.* § 924(c)).[4] *Taylor*, 596 U.S. at ___, 142 S. Ct. at 2019. Pursuant to a federal law authorizing enhanced punishment where a firearm is used in connection with a "crime of violence" (18 U.S.C. § 924(c)), he was sentenced to 30 years in prison, 10 more than he would have received for the attempted Hobbs Act robbery alone. *Taylor*, 596 U.S. at ___, 142 S. Ct. at 2019. He later filed a federal habeas petition challenging his section 924(c) conviction, arguing it was predicated on

---

[3]The Supreme Court issued its decision in *Taylor* after the parties here had already filed their briefs. This court granted defendant leave to cite *Taylor* as additional authority.

[4]Under the Hobbs Act, it is a federal crime to, *inter alia*, commit, attempt to commit, or conspire to commit a robbery with an interstate component. T*aylor*, 596 U.S. at ___, 142 S. Ct. at 2019 (citing 18 U.S.C. § 1951(a)). The Hobbs Act defines robbery as the " 'unlawful taking or obtaining of personal property from the person *** of another, against his will, by means of actual or threatened force.' " *Id.* at ___, 142 S. Ct. at 2020 (quoting 18 U.S.C. § 1951(b)).

conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery, which did not qualify as "crimes of violence." *Id.* at ___, 142 S. Ct. at 2019. The government argued that attempted Hobbs Act robbery qualified as a "crime of violence" under the "elements clause" of section 924(c). *Id.* at ___, 142 S. Ct. at 2019.

¶ 40 Under the "elements clause," a federal felony is a "crime of violence" if the felony "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A)). Similar to this court's statement of the question at issue under the elements test in *Schultz*, 2019 IL App (1st) 163182, ¶ 41 (in undertaking this analysis, the question is whether one could violate the attempted robbery statute without " 'the use or threat of physical force or violence' " within the meaning of section 2-8), the Supreme Court found the only relevant question was whether attempted Hobbs Act robbery "always" requires proof, beyond a reasonable doubt and as an element of the case, of the use, attempted use, or threatened use of force. *Taylor*, 596 U.S. at ___, 142 S. Ct. at 2020.

¶ 41 The Supreme Court stated the elements of attempted Hobbs Act robbery are (1) the defendant intended to unlawfully take or obtain personal property through actual or threatened force, and (2) he completed a substantial step toward that end. *Id.* at ___, 142 S. Ct. at 2020. Based on these elements, the court found attempted Hobbs Act robbery did not satisfy the elements clause because "an intention is just that, no more." *Id.* at ___, 142 S. Ct. at 2020. "[W]hatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* at ___, 142 S. Ct. at 2020.

¶ 42 The Court then offered a hypothetical example to illustrate the point:

"Suppose Adam tells a friend that he is planning to rob a particular store on a particular date. He then sets about researching the business's security measures, layout, and the time of day when its cash registers are at their fullest. He buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car. Finally, he drafts a note—'Your money or your life'—that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off." *Id.* at ___, 142 S. Ct. at 2021.

¶ 43 The court stated Adam could be convicted of attempted Hobbs Act robbery, as he intended to take property by threat of force and, by planning the robbery and entering the store, took a substantial step towards doing so. *Id.* at ___, 142 S. Ct. at 2021. However, the example illustrated why "attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause," as Adam did not use, attempt to use ("his note was a bluff and never delivered"), or threaten to use ("he never even got to [that] point") force. *Id.* at ___, 142 S. Ct. at 2021. He may have intended and attempted to threaten force, but he failed. *Id.* at ___, 142 S. Ct. at 2021. Thus, as "no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force," the court found Adam did not commit a "crime of violence." *Id.* at ___, 142 S. Ct. at 2021.

¶ 44 The statutes at issue in *Taylor* mirror the statutes at issue here. The elements of attempted Hobbs Act robbery mirror the elements of attempted robbery under the Code (720 ILCS 5/8-4(a), 18-1(a) (West 2012)), and the federal elements clause defining a "crime of violence" mirrors the

*Sanderson* and *Schultz* tests for determining whether an offense is a forcible felony under section 2-8's residual clause. See *Sanderson*, 2016 IL App (1st) 141381, ¶ 6 (an offense is a forcible felony if its elements necessarily entail use or threat of force or violence); *Schultz*, 2019 IL App (1st) 163182, ¶ 41 (the question is whether one could violate the attempted robbery statute without " 'the use or threat of physical force or violence' " within the meaning of section 2-8).

¶ 45     Illinois courts "are not required to interpret our statutes in lockstep with the federal courts' interpretation of cognate federal statutes." (Emphasis omitted.) *Gusciara v. Lustig*, 346 Ill. App. 3d 1012, 1019 (2004). And, as the State notes, we have held that "[t]he use of force or the threat of the imminent use of force is an essential element in the crimes of robbery and attempt robbery" and is the element that "differentiates robbery from theft." *People v. Williams*, 42 Ill. App. 3d 134, 138 (1976), *abrogated on other grounds, People v. Pierce*, 226 Ill. 2d 470 (2007).

¶ 46     Nevertheless, we find the Supreme Court's discussion in *Taylor* persuasive. See *Thomas*, 407 Ill. App. 3d at 139-40 (finding "some guidance" for interpreting section 2-8's residual clause in federal cases interpreting whether a felony involved the use, attempted use, or threatened use of force). As *Taylor* demonstrates, attempted robbery may be committed without using or threatening violence, and thus the elements of attempted robbery do not "necessarily" entail the use or threat of force or violence. See *Sanderson*, 2016 IL App (1st) 141381, ¶ 6 (offense is a forcible felony if its elements " 'necessarily' " entail use or threat of force or violence). Therefore, it does not have as an element the specific intent to carry out a violent act. *Id.* Accordingly, as every instance of attempted robbery does not necessarily qualify as a forcible felony, the offense is not an inherently forcible felony under the elements of the offense approach.

¶ 47    The State argues that attempted robbery is a forcible felony because it requires the intent to commit robbery, which has as an element the use or threat of force. However, not every attempt to commit one of the enumerated forcible felonies is a forcible felony itself. *Id.* (rejecting State's argument "that every attempt to commit an enumerated forcible felony falls within the residual clause"). The State further notes that the elements of attempted *armed* robbery qualify it as a forcible felony. *People v. Brown*, 2017 IL App (1st) 150146, ¶¶ 21-22. However, in *Brown*, we specified that it was the fact that the defendant must be armed to commit attempted armed robbery that "necessarily demonstrated the requisite contemplation or willingness to use force." *Id.* ¶ 21 (citing *Belk*, 203 Ill. 2d at 196 (being armed "necessarily implies that [he] contemplated that the use of force or violence against an individual might be involved and that [he was] *willing* to use such force or violence" (emphasis in original))); see *People v. Schmidt*, 392 Ill. App. 3d 689, 700 (2009) (distinguishing the defendant's offense from one involving the use of a firearm, as *Belk* found that a "crucial distinction" and suggested that the presence of a firearm may determine whether a crime is a forcible felony (internal quotation marks omitted)).

¶ 48    Being armed is not an element of attempted robbery and, as noted, the State presented no evidence that defendant was armed when he committed the attempted robbery offense.

¶ 49    Defendant's attempted robbery conviction was not for a forcible felony. Thus, the court erred in sentencing defendant for Class 2 UUWF rather than Class 3 UUWF. 720 ILCS 5/24-1.1(e) (West 2018) (UUWF is a Class 3 felony unless, *inter alia*, the defendant has been convicted of a forcible felony). The sentencing error affected defendant's fundamental right to liberty, and therefore it satisfies the second prong of plain-error review. *Smith*, 2016 IL App (1st) 140496, ¶ 15; see also *People v. McMann*, 305 Ill. App. 3d 410, 414 (1999) ("Sentencing issues may be

reviewed as plain error where the issue is one of misapplication of the law, as the right to be sentenced lawfully is substantial and affects a defendant's fundamental right to liberty.").

¶ 50    The record suggests that the court's erroneous enhancement of defendant's offense may have influenced the sentence it imposed. The court found defendant had a "violent" background that included the 2013 attempted robbery but also noted there were mitigating factors and "not all gun cases are equal." Believing the appropriate sentencing range was 3 years to 14 years (Class 2), it then sentenced him to 10 years' imprisonment, 4 years below the maximum. However, the appropriate range was actually 2 years to 10 years (Class 3). Accordingly, as the court might not have sentenced defendant to 10 years' imprisonment had it considered the correct sentencing range, we vacate defendant's sentence and remand for resentencing. *Smith*, 2016 IL App (1st) 140496, ¶ 15 (vacating sentence and remanding for resentencing because sentencing court plainly erred by enhancing class of offense where underlying conviction was not a forcible felony); see also *People v. Eddington*, 77 Ill. 2d 41, 48 (1979) (misstatement of minimum sentence by trial judge necessitates new sentencing hearing where mistaken belief "arguably influenced the sentencing decision").

¶ 51    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and vacated in part. We remand for a new sentencing hearing.

¶ 52    Affirmed in part and vacated in part; cause remanded.

*People v. Mosley*, 2023 IL App (1st) 200309

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-16402; the Hon. Michael B. McHale, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and David Holland, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham and David H. Iskowich, Assistant State's Attorneys, of counsel (Chijioke Uwandu, law school graduate)), for the People. |