2025 IL App (1st) 221856-U

No. 1-22-1856

Order filed January 21, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 60053 |
| | ) | |
| VERONICA HARDEN, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm defendant's aggravated vehicular hijacking conviction, where the trial testimony and video footage, along with still images, were sufficient evidence to establish that defendant was the offender.

¶ 2     Following a bench trial, defendant Veronica Harden was found guilty of one count of aggravated vehicular hijacking (720 ILCS 5/18-4(a)(1) (West 2020)) and one count of possession of a stolen motor vehicle (PSMV) (625 ILCS 5/4-103(a)(1) (West 2020) and sentenced to 15 years in prison. On appeal, defendant argues that the evidence was insufficient to prove her guilty of

aggravated vehicular hijacking beyond a reasonable doubt because the evidence identifying her as the offender is unsatisfactory. We affirm.

¶ 3    Defendant was charged by indictment with multiple offenses arising from a vehicular hijacking on February 24, 2021, of Mercedes Palencia, who was 60 years old or older, and defendant's PSMV on February 25, 2021. The State proceeded on one count of aggravated vehicular hijacking (count I) and one count of PSMV (count III).

¶ 4    At trial, Palencia testified that on February 24, 2021, at around 9:30 p.m., she was at the Walgreens at Montrose and Kedzie Avenue in Chicago, Illinois. Palencia had parked her blue 2008 Honda Civic in the parking lot of Walgreens. After shopping, Palencia returned to her vehicle and sat in the driver's seat. As she attempted to close the driver's side door, a woman wearing a mask and a black jacket approached Palencia from behind and told her to get out of her vehicle.

¶ 5    Palencia attempted to drive away with the door open, but the woman grabbed her, pulled her out of the vehicle, and threw her to the ground. The woman got into Palencia's vehicle and drove away. Because it was dark outside and the woman was wearing a mask, Palencia was only able to see the woman's eyes, not her face. Two people parked in the Walgreens parking lot called 911. Chicago police officers arrived and obtained information from Palencia, including her vehicle identification number.

¶ 6    On February 26, 2021, Palencia went to the police station and viewed a photo array, which was published at trial. Palencia selected one of the photographs, because of the "light color" of the woman's eyes. When the incident occurred, Palencia "kind of blank[ed]" and had "fear of what happened." Palencia did not have a good angle of the person in her vehicle when she was on the

ground. The incident happened very quickly, and she had minutes to see the person's face. Palencia did not make an in-court identification of defendant.

¶ 7     Chicago police sergeant Bartholomew Murphy testified that on February 25, 2021, he was a detective assigned to the carjacking task force. He met with Palencia, who told him that while she was loading groceries into her vehicle, a woman attacked her, physically removed her from her vehicle, and drove away. As part of the investigation, Murphy viewed video surveillance footage from Walgreens and a BP gas station that was across the street on Kedzie. In the footage, he saw the person who allegedly took Palencia's vehicle coming from the BP parking lot into the Walgreens parking lot. Murphy described the person as having a "noticeable type of gait." When Murphy interviewed defendant on February 26, 2024, she was hospitalized for severe infections in her lower legs.

¶ 8     Chicago police officer Alberto Retamozo testified that on February 25, 2021, he and police officer Bill Bongartz were informed about a vehicular hijacking that happened the night before and viewed "the video" of a woman exiting the alley area, approaching a vehicle on the driver's side, pulling the woman out, and "taking off." The officers then inquired about "the plate reader" and learned that the Illinois license plate register had a "hit" about an hour earlier.  Several hours later, the officers saw Palencia's vehicle, which was a few blocks away from the Walgreens, and initiated a stop. At about 9:31 p.m., officers found defendant in the driver's seat as the sole occupant of the vehicle. Defendant was arrested and her clothing was inventoried, which included an outdoor jacket, "hoodie," and headband. Officers transported defendant to the hospital for treatment of open sores on her legs.

¶ 9    Martin Sainz-Samudio testified that he knew defendant for almost 10 years and identified her in court. Sainz-Samudio met with a detective who showed him photographs, including People's Exhibit No. 6, which were entered into evidence. People's Exhibit No. 6 is a still photo of the person in the BP gas station video. Sainz-Samudio testified the detective might have shown him that photograph but he "can't see the face." The State played the BP surveillance video, and Sainz-Samudio said the person in the video was "walking like [defendant]. I can't see her face." On cross-examination, Sainz-Samudio confirmed that he has poor vision and sometimes wears glasses or contacts. Sainz-Samudio told the detective who showed him photos on February 26, 2021, that he did not have his glasses and could not see very well, so the detective enlarged the photos and he saw them more clearly.

¶ 10    The surveillance videos of the Walgreens parking lot and the BP gas station across the street were entered into evidence and are included in the record on appeal. In the BP gas station video, we observe a person wearing a knee-length black jacket with a hood, face mask, and white shoes walk across the BP lot with gas pumps visible in the frame. There are two Walgreens parking lot videos, captured from different angles. In one of the Walgreens videos, we observe Palencia walking to her vehicle, which is the only vehicle in the parking lot captured by this surveillance video. In the background of the video, we observe a gas station across the street and an individual wearing a knee-length black jacket with a hood walk across the street from the gas station and approach Palencia's vehicle in the parking lot, open the driver's side door, and remain there until the vehicle drives away. After the vehicle drives away, Palencia is seen on the ground. The other Walgreens surveillance video depicts the incident from a different angle, showing the person

pulling Palencia from her vehicle and putting her on the ground. The encounter lasted about 50 seconds.

¶ 11    The State also published body worn camera videos from defendant's arrest, which were entered into evidence and included in the record on appeal. In the videos, we observe officers approach a blue vehicle, remove defendant from the vehicle, and handcuff her with no incident. Defendant is wearing a knee-length black jacket, hat, and white shoes. Defendant appears similar in size to the person observed in the surveillance videos.

¶ 12    Still photographs from the surveillance and body worn camera videos were entered into evidence. People's Exhibit No. 6 is a still photograph of the individual from the BP gas station video and shows the individual wearing a knee-length black jacket with three buttons on the collar that opened to the side toward the shoulder and white shoes. The individual is also wearing a face mask and hood. The still photographs from defendant's arrest, People's Exhibits No. 12 and No. 13, show her wearing a knee-length black jacket with three buttons on the collar that opened to the side toward the shoulder, hat, and white shoes.

¶ 13    The court found defendant guilty of one count of aggravated vehicular hijacking and one count of PSMV. The trial court disregarded Sainz-Samudio's testimony, explaining that it did not know what he said before regarding the still photograph of the individual in the BP gas station video, but at trial, "he couldn't identify who that was, because he couldn't see the face." The court found the video evidence "the heart of the case" and "speaks for itself." The court stated it had "no doubt" that defendant was guilty of PSMV after defendant was found driving the stolen vehicle 24 hours later. Regarding the aggravated vehicular hijacking, the court noted that "it's not just one or two things." Viewing the evidence in total, the court had "no doubt" that defendant was in "that

video" doing the aggravated vehicular hijacking, the same person arrested in the vehicle 24 hours later.

¶ 14    Defendant filed a motion to reconsider or, alternatively, for a new trial, asserting insufficient evidence identifying her as the offender. The trial court denied defendant's motion. The court merged the PSMV count into the aggravated vehicular hijacking count and sentenced defendant to 15 years in prison. The court denied defendant's motion to reconsider sentence.

¶ 15    On appeal, defendant argues that the State's evidence was so unsatisfactory that it left reasonable doubt as to whether defendant committed an aggravated vehicular hijacking. She requests reversal of that conviction and remand for resentencing on the remaining PSMV count. Defendant does not challenge the finding of guilty as to PSMV.

¶ 16    In reviewing a challenge to the sufficiency of the evidence, this court considers " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review applies in all criminal cases, whether the evidence is direct or circumstantial. *People v. Jackson*, 2020 IL 124112, ¶ 64. "Further, circumstantial evidence that meets this standard is sufficient to sustain a criminal conviction." *Id*.

¶ 17    In a bench trial, "it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). This court will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Mosley*, 2023 IL App (1st) 200309, ¶ 18. We will reverse a conviction only where the

evidence is so improbable, unreasonable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 18    As charged, a person commits the offense of aggravated vehicular hijacking when she knowingly takes a motor vehicle from the person of another by the use of force or by threatening the imminent use of force and the person whose vehicle is taken is 60 years of age or over. 720 ILCS 5/18-3, 5/18-4(a)(1) (West 2020). To sustain a conviction, the State must prove the identity of the offender beyond a reasonable doubt. *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). Defendant only challenges the sufficiency of the evidence establishing her identity as the offender.

¶ 19    Here, taking the evidence in the light most favorable to the State, as we must, we find that a rational trier of fact could find defendant guilty of aggravated vehicular hijacking beyond a reasonable doubt. The State's evidence at trial consisted of testimony, surveillance videos, body worn camera videos, and still images from the video evidence.

¶ 20    At trial, Palencia described the offender as a female wearing a black jacket and face mask, which did not cover her eyes. The surveillance videos from the offense show an individual wearing a black jacket and face mask, which did not cover the eyes, approach Palencia in her vehicle and ultimately drive away in the vehicle. The next evening, defendant was driving Palencia's vehicle and pulled over by the police. The body worn camera videos of defendant's arrest show her wearing a knee-length black jacket and white shoes.

¶ 21    The video stills from the BP surveillance video and body worn camera footage at defendant's arrest both show an individual of similar body size wearing a knee-length black jacket with three buttons on the collar that opened to the side toward her shoulder and white shoes. Additionally, Chicago police sergeant Murphy described the person seen in the surveillance

footage as having a "noticeable type of gait" when walking, and defendant was hospitalized after her arrest for a severe infection in her lower legs. Taking all the evidence together as a whole, we cannot find that the evidence was "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 22    Defendant nevertheless asserts that the State's evidence is unsatisfactory because Palencia did not identify defendant in the photo array or in court, the court disregarded Sainz-Samudio's inability to identify defendant at trial despite knowing her for a decade, and the videos and video stills were inadequate to permit anyone to accurately identify defendant as the offender. In considering the evidence presented at trial, the trial court, sitting as the trier of fact, was not required to "disregard inferences that flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70. Defendant essentially is asking this court to reweigh the evidence and the reasonable inferences therefrom in her favor. We cannot do so, because the trial court, as finder of fact, was responsible for those determinations. *Siguenza-Brito*, 235 Ill. 2d at 228. Rather, our task is to review the evidence and determine whether, in viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McLaurin*, 2020 IL 124563, ¶ 22. Viewing all the evidence in the light most favorable to the State, we conclude that a rational trier of fact could find that the State proved defendant guilty of aggravated vehicular hijacking beyond a reasonable doubt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 24    Affirmed.