2025 IL App (1st) 231605-U

No. 1-23-1605

Order filed May 28, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 770 |
| | ) | |
| RANDY SMITH, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for unlawful use or possession of a weapon by a felon
(UUWF) is affirmed when (1) the evidence was sufficient to prove beyond a
reasonable doubt that he possessed a firearm and (2) his facial and as-applied
constitutional challenges to the UUWF statute lack merit.

¶ 2    Following a bench trial, defendant Randy Smith was found guilty of unlawful use or

possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to

two years in prison.[1] On appeal, defendant argues that there was insufficient evidence to find him guilty beyond a reasonable doubt and, citing *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the UUWF statute violates the second amendment of the United States Constitution. We affirm.[2]

¶ 3      Defendant was charged with two counts of aggravated unlawful use of a weapon (AUUW) and one count of UUWF following an incident in Chicago, Illinois. The State proceeded on one count of AUUW and UUWF.

¶ 4      At trial, Chicago police officer Brian Collins testified that on November 8, 2020, at around 1:40 a.m., he and police officer Aaron David received ShotSpotter alerts and multiple calls of shots fired and a person shot. The officers were directed to an alley and observed a group of men who fled when they saw Collins's police vehicle. Collins lost sight of the men, but when he drove further he saw the men run up the back steps of a porch of a multi-unit building. Collins heard banging on a door and someone say "something to the effect of open up, the police are here."

¶ 5      Collins jumped a fence and ran up the stairs of the building. As he rounded a corner, Collins announced that he was a police officer and observed three or four people standing on the porch beside a garbage can. Collins recognized defendant, whom he identified in court, as one of the people from the alley. Defendant approached the garbage can while "making motions" with his waistband. Defendant was holding a firearm. He used his left arm to open the garbage can and

---

[1]Effective January 1, 2025, section 24-1.1 of the Criminal Code of 2012 has been renamed from "[u]nlawful use or possession of weapons by felons" to "[u]nlawful possession of weapons by felons." The elements of this offense have not changed. We will refer to this offense by the prior name because that is the version of the statute under which defendant was charged.

[2]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

used his right hand to place the firearm inside. Collins retrieved the firearm and called to his partner to detain defendant, who was descending the stairs.

¶ 6     The State published Collins's body-worn camera video, which was entered into evidence and included in the record on appeal. Relevant here, we observe Collins driving a police vehicle with lights activated and accelerating when he turns into what appears to be an alley. Collins exits the vehicle, jumps over a fence, and runs up a flight of stairs. As Collins approaches the second landing, he activates his flashlight, announces he is a Chicago police officer, and approaches a group of men. One man descends the stairs as Collins shouts to his partner to detain the man.

¶ 7     On cross-examination Collins conceded that the body-worn camera video does not show defendant in the alley, running up the stairs, holding a firearm, taking a firearm from his waistband, or opening a garbage can and putting an object in it. The other individuals on the porch did not obscure Collins's view of defendant. When Collins ran up the stairs, he saw defendant from behind and could see the firearm come from defendant's "right side and his right hand to the garbage bin." Collins could not recall if he heard an object fall in the garbage can, as "it was a pretty chaotic scene." Collins was approximately 15 feet from defendant while making these observations.

¶ 8     The parties stipulated that defendant did not have a valid Firearm Owners Identification card or a concealed carry license on the date of the incident and is a convicted felon.

¶ 9     Defendant moved for a finding of not guilty on both counts. The court granted the motion on the AUUW count and the defense rested.

¶ 10    Following arguments, the court found defendant guilty of UUWF. In ruling, the court stated the body-worn camera video "offered no help at all" as it did not depict "what is alleged to have occurred," namely, "defendant with the gun in his hand and throwing it into the garbage can." The

court found Collins's testimony credible that he saw people in the alley, pursued them up the stairs, saw defendant lift the garbage can lid and place the firearm inside the can, immediately recovered the firearm, and told his partner to arrest defendant. Given the stipulation indicating that defendant had a prior felony conviction, the court found that the State met its burden to prove defendant guilty of UUWF beyond a reasonable doubt

¶ 11    Defendant's presentence investigative (PSI) report and information adduced at his sentencing hearing established that he had a juvenile adjudication for armed robbery with a firearm (1996) and convictions for conspiracy to possess with intent to distribute (2000), three convictions for driving on a suspended license (2012 and 2014), possession of cannabis (2014), and resisting a peace officer (2020).

¶ 12    Defendant filed a motion to vacate the finding of guilty or, alternatively, for a new trial, asserting that the State failed to prove him guilty of UUWF beyond a reasonable doubt. The trial court denied defendant's motion and sentenced him to two years in prison. The record does not indicate that defendant filed a motion to reconsider sentence.

¶ 13    On appeal, defendant first argues that there was insufficient evidence to find him guilty of UUWF beyond a reasonable doubt. Specifically, defendant asserts that the State failed to prove beyond a reasonable doubt that he possessed the firearm recovered from the garbage can.

¶ 14    In reviewing a challenge to the sufficiency of the evidence, this court considers " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a bench trial, "it is for the trial judge, sitting as the trier of fact, to determine the

credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). This court will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Mosley*, 2023 IL App (1st) 200309, ¶ 18. We will reverse a conviction only where the evidence is so improbable, unreasonable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 15    The State has the burden of proving beyond a reasonable doubt each element of an offense. *Id.* To sustain a conviction for UUWF, the evidence must establish beyond a reasonable doubt that the defendant possessed a firearm and was convicted of a prior felony. 720 ILCS 5/24-1.1(a) (West 2020). The parties stipulated to defendant's prior felony conviction. Thus, the only question is whether the State proved defendant possessed a firearm.

¶ 16    When, as here, a conviction depends on eyewitness testimony, we must decide whether any trier of fact could reasonably accept it to be true beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. The testimony of a single witness is sufficient to support a conviction if the witness viewed the accused under circumstances permitting a positive identification. *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 42. An eyewitness's testimony "may be found insufficient only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." (Internal quotation marks omitted.) *Gray*, 2017 IL 120958, ¶ 36.

¶ 17    Here, taking the evidence in the light most favorable to the State, we find that a rational trier of fact could find defendant guilty of UUWF beyond a reasonable doubt. The State's evidence comprised testimony and a body-worn camera video. Collins testified that he saw defendant in the alley and again with other people on the porch. From 15 feet away, Collins observed defendant

place the firearm in the garbage can on the porch. Collins recovered the firearm from the same garbage can and told his partner to arrest defendant, who was descending the stairs. The trial court found Collins credible, and we defer to that determination. *People v. Little*, 2018 IL App (1st) 151954, ¶ 56. Furthermore, this Court has viewed the body-worn camera video. The footage depicts Collins running up a flight of stairs, confronting a group of men, and telling his partner to arrest defendant as he descends stairs, which corroborates Collins's account. Additionally, it is clear from the video that the garbage can was not visible to the camera at the time Collins's testified that he observed Smith place the gun in the can. As a camera's field of view is more limited than a person's, Officer Collins could have viewed Smith place the gun in the garbage can even if his body-worn camera failed to capture the event. Collins's testimony that he saw defendant possess a firearm and place it in the garbage can is, standing alone, sufficient to prove defendant guilty of UUWF beyond a reasonable doubt. *Siguenza-Brito*, 235 Ill. 2d at 228 ("the testimony of a single witness, if positive and credible, is sufficient to convict").

¶ 18    Defendant, nevertheless, asserts that the body-worn camera footage shows that it was "improbable" for Collins to see what he described because he only had "a second at most" to view defendant lift the garbage can lid and throw the firearm in. Further, defendant notes the firearm was not admitted into evidence and there was no forensic evidence such as fingerprints or DNA.

¶ 19    Defendant is essentially asking this court to reassess Collins's credibility and weigh the evidence in his favor. The trial court, as finder of fact, was responsible for those determinations. *Siguenza-Brito*, 235 Ill. 2d at 228. The trial court found Collins "credible" and considered the limitations of the body-worn camera video that defendant asserts here. We will not substitute our judgment for that of the trial court as trier of fact on those matters. *People v. Patterson*, 314 Ill.

App. 3d 962, 969 (2000). Additionally, "physical evidence is not required to sustain a conviction, and the testimony of a single witness, if positive and credible, is sufficient to convict." *People v. Hill*, 2023 IL App (1st) 150396, ¶ 23. Taking all the evidence together, we cannot find that the evidence was "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 20    Accordingly, viewing the evidence in the light most favorable to the State, as we must, we conclude that there was sufficient evidence to support defendant's conviction for UUWF.

¶ 21    Defendant next argues that the UUWF statute violates the second amendment of the United States Constitution on its face and as applied to him. Relying on the United States Supreme Court's decision in *Bruen*, 597 U.S. 1 (2022), defendant argues that the statute is facially unconstitutional as the State cannot show a "relevant historical practice like the enforcement of the [UUWF] statute, which permanently disarms individuals based on their felon status." He also argues the UUWF statute is unconstitutional as applied to him because his only prior felony was over 21 years ago for a nonviolent offense.

¶ 22    A party challenging the constitutionality of a statute "carr[ies] the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 23. A facial challenge alleges that the statute is unconstitutional under any set of facts; an as-applied challenge alleges only that the statute violates the constitution as applied to the particular set of facts and circumstances of the case at bar. *People v. Thompson*, 2015 IL 118151, ¶ 36. Whether a statute is constitutional is a question of law we review *de novo*. *People v. Smith*, 2024 IL App (1st) 221455, ¶ 9 (citing *People v. Davis*, 2014 IL 115595, ¶ 26).

¶ 23    The UUWF statute provides that it is a felony to "knowingly possess on or about [one's] person or on [one's] land or in [one's] own abode or fixed place of business any *** firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2020).

¶ 24    The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

¶ 25    In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which it stated that the Second Amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635. The court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons *** or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.

¶ 26    In 2010, the Court extended the right to keep and bear arms to the states under the Second Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The Court reiterated that its decision in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' " *Id*. at 786 (quoting *Heller*, 554 U.S. at 626-27).

¶ 27    In *Bruen*, the United States Supreme Court announced a new analytical framework for evaluating the constitutionality of firearm regulations. Under *Bruen*, courts only have to consider the "plain text" and history. *Bruen*, 597 U.S. at 24. First, an individual's conduct is presumptively protected if the conduct is covered by the Second Amendment's plain text. *Id*. Second, if the individual's conduct is covered by the Second Amendment, then "the government must

demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. at 17.

¶ 28    As the Supreme Court explained in *United States v. Rahimi*, 602 U.S. 680 (2024), "*Bruen* was not intended to suggest a focus on whether the defendant is engaged in non-lawful conduct in determining whether that conduct falls within the scope of the second amendment." *People v. Doehring*, 2024 IL App (1st) 230384, ¶ 24. Thus, while the petitioner in *Rahimi* had been found to pose a threat to the safety of his girlfriend and child, "the Supreme Court did not suggest that this conduct removed the petitioner from the scope of the second amendment's protection" and instead "proceeded to conduct a historical analysis to determine whether the firearm restriction at issue was permissible." *Id.* ¶ 25; see *Rahimi*, 602 U.S. at 687, 693-700.

¶ 29    Here, defendant claims that the conduct prohibited by the UUWF statute, *i.e.*, possession of a firearm, is covered by the plain text of the Second Amendment and therefore is presumptively protected. To the extent that defendant's status as a felon affects his right to bear arms, "the circumstances surrounding the carrying of the firearm are not relevant at [the first] stage of the analysis" and, following *Rahimi*, that consideration is more appropriately reviewed at the second stage for whether a historical analogue exists. *Doehring*, 2024 IL App (1st) 230384, ¶ 26.

¶ 30    Under the second step of the *Bruen* analysis, this court has found ample historical support for the legislature's ability to prohibit possession of firearms by felons. *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105. The historical analysis included "widespread acceptance of the legislatures' authority to disarm felons" during the founders' era. *Id*. ¶ 96. *Brooks* recognized a "historical tradition of legislatures exercising their discretion to impose status-based restrictions disarming entire categories of persons who, based on their past conduct, were presumed unwilling

to obey the law" and that "the founders understood that felons were one such group." (Internal quotation marks omitted.) *Id.* ¶ 97. Thus, defendant's facial challenge to the UUWF statute fails.

¶ 31    Defendant next argues that the UUWF statute is unconstitutional as applied to him. He contends there is no historical basis for prohibiting a person like him from exercising his Second Amendment right because he is not a "presently-dangerous" individual. Specifically, defendant argues that violence was not an element of his "decades-old" felony conviction for conspiracy to possess with intent to distribute, he otherwise has no felony offenses as an adult, and even if his 1996 juvenile adjudication reflected "dangerousness" it was from decades ago.

¶ 32    The State responds that defendant's as-applied challenge is forfeited because defendant failed to raise the issue before the trial court. Facial constitutional challenges may be raised at any time; however, as-applied constitutional challenges cannot. See *Thompson*, 2015 IL 118151, ¶¶ 32-37. Because as-applied challenges depend on the particular facts of the individual, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 37. Thus, generally, a defendant must present his as-applied constitutional challenge to the trial court to create that sufficient record. *Id.* at ¶ 32. However, our supreme court has held that, where the evidentiary record is sufficient, we may consider an as-applied constitutional challenge for the first time on appeal. *People v. Holman*, 2017 IL 120655, ¶ 32 *overruled on other grounds by People v. Wilson*, 2023 IL 127666, ¶ 42; see *People v. Robinson*, 2011 IL App (1st) 100078, ¶¶ 12, 17, 29 (considering facial and as-applied constitutional challenges that were raised for the first time on appeal).

¶ 33    The State asserts that the record does not contain all the necessary evidence to decide defendant's as-applied constitutional challenge. We disagree. According to the State, defendant's

Second Amendment challenge turns on whether he was a "presently dangerous" individual at the time of his offense, an issue that was not litigated below. However, the record contains defendant's criminal history in his PSI. Further, it is unclear what other information would have been presented to litigate the issue. We therefore consider the merits of defendant's as-applied challenge on appeal. See *Brooks*, 2023 IL App (1st) 200435, ¶¶ 59-62 (explaining that the evidentiary record below was sufficiently developed for review and the State failed to identify any relevant omitted facts that could have been produced below).

¶ 34    That said, defendant's as-applied constitutional challenge to the UUWF statute fails the *Bruen* analysis.

¶ 35    This court has not held that the prohibition on firearms possession for felons is unconstitutional as applied to nonviolent felons. See *People v. Echols*, 2024 IL App (2d) 220281-U, ¶ 156 ("whether defendant's qualifying convictions were 'nonviolent' is irrelevant, as the Supreme Court placed no qualifiers on the word 'felons' in either *Heller* or *McDonald*"); *People v. Gross*, 2024 IL App (2d) 230017-U, ¶ 27 ("neither *Heller* nor *Bruen* qualified the term 'felon' or otherwise limited it to violent felons"); see also *Medina v. Whitaker*, 913 F. 3d 152, 159 (D.C. Cir. 2019) (observing that "[f]elonies encompass a wide variety of non-violent offenses, and we see no reason to think that the [United States Supreme Court] meant 'dangerous individuals' when it used the word felon" in *Heller*).[3]

¶ 36    Although felons were not broadly prohibited from possessing firearms until the twentieth century, "such laws evolved from preexisting prohibitions restricting access to firearms," including

---

[3]Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023) provides that unpublished Rule 23 orders filed on or after January 1, 2021, "may be cited for persuasive purposes."

by certain groups of people. *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 28-29. In colonial America, for example, legislatures " 'disarm[ed] individuals whose status indicated that they could not be trusted to obey the law.' " *Id*. ¶¶ 30-31 (quoting *Brooks*, 2023 IL App (1st) 200435, ¶ 94).

¶ 37     The Supreme Court has not made a distinction in approved bans on firearm possession for felons and a felon's "dangerousness" has not been a consideration in prohibiting that felon from possessing a firearm. Thus, defendant's contention that he lacks "present dangerousness" does not affect the constitutionality of the UUWF statute and it is constitutional as applied to defendant.

¶ 38     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 39     Affirmed.